CASE NUMBER: 08 C **50148**

# NORTHERN ILLINOIS DISTRICT COURT
**211 South Court Street**
**Rockford, Illinois 61101**

### IN RE: Terence Bruce Richards
**Bankruptcy Case Number 03B71403**

# FILED

JUL 3 0 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## APPALLENT'S BRIEF

Terence Bruce Richards
P. O. Box 3030
Chicago, Illinois 60657

Bankruptcy Trustee: James E. Stevens

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Statement of Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Short Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

IN RE GRUBBS 45 B.R. 674 (BANKR W.D. VA 1985)

HOWKINS VS LANDMARK FINANCE CORP 727 F2d 324, 326

IN RE MC NEIC 8 B.CD 174 (BANKR S.D. NY 1981)

IN RE BROOMFIELD 3 B.CD 760 (BANKR S.D. NY 1977)

IN RE CASTLEDEAM 3 B.CD 6 (BANK N.D. GA 1977)

IN RE HALLOWAY 10 B.R. 744 (BANK D. RI 1981)

MILLER VS SAVES (IN RE JONES) 178 B.R. 1,3

MATTER OF YOUNKENS 974 F2d 901, 904 (7TH CR 1992)

FIRST NATIONAL BANK OF GRIFFIN VS SERAFINI 938 F2d 1152, 1156

BOWMAN VS BELL VALLEY BANK (IN RE BOWMAN) 173 B.R. 922, 925

ANASKIN VS PRICE (IN RE PRICE) 777 BR 235, 259

2

## JURISDICTIONAL STATEMENT

THIS COURT HAS JURISDICTION PURSUANT TO 28 USC 1331

THIS IS AN APPEAL FROM JUNE 4TH 2007

---

## STATEMENT OF ISSUES

Whether Judge Manual Barbosa abused his discretion in denying the plaintiff

of the opportunity to reopen his bankruptcy case under Title 11 U.S.C. §350, to

modify the bankruptcy discharge injunction under Title 11 U.S.C. §727.

## STATEMENT OF CASE

The main bankruptcy case was filed on March 14th, 2003, under case number 03B71403. The Bankruptcy Trustee James E. Stevens filed two adversaries against a third party by the name of Donald James Harrington under adversary cases 03A7063 (property) and 03A7083 (monetary equivalency) in the respective amounts of $36,000.00 and $42,000.00 on July 29th, 2003 and November 3rd, 2003 respectively. The Bankruptcy Trustee initiated the Citation to Discover assets, Rule to Show Cause, and body attachment for case 03A7063, and only a Citation to Discover Assets for adversary case 03A7083. This second adversary contained the stolen cash equivalents that third party Donald James Harrington was arrested and indicted on. Thereafter, on July 14th, 2004, the Bankruptcy Trustee James E. Stevens moved to revoke the debtor's bankruptcy discharge, that was entered on October, 2nd, 2003, on the purported grounds, that the debtor conspired with Donald James Harrington to perpetrate a fraud upon the Bankruptcy Court, their true intentions, was, that the Court and the Trustee believe that the Debtor was not cooperating with the bankruptcy trustee James E. Stevens.

## STATEMENT OF FACTS

1. On or about October 23rd, 2002, the Plaintiff Richards lent $2,000.00 dollars to a third party by the name of Donald James Harrington, at his prior residence (2408 Aspen Drive, Woodstock, Illinois 60098). The third party upon his representations, was going to be using the money to pay his hospital bill for his newborn son, Tristen. The Plaintiff borrowed this money from his Harris Unsecured Banking loan account. (Acct #029-0008-100238438).

2. On or about, November 1st, 2002, the Plaintiff Richards lent $750.00 dollars to third party by the name of Donald James Harrington, in the Dominikk's parking lot located in Mc Henry, Illinois. The third party, after one and half hours of coercing, threatening, and intimidating the plaintiff to lend him this money, so he can pay for his new born child's basic psychological factors (food, clothing, and shelter).

3. On or about, November 5th, 2002, the Plaintiff Richards lent third party, Harrington $715.00 dollars, so the third party Harrington could pay his wife's ob/gyn doctor bill. This transaction occurred at a strip joint, in Lake Geneva, Wisconsin.

4. On or about, November 2nd, 2002, the Plaintiff Richards, harassed at his home, located at 2408 Aspen Drive, Woodstock, Illinois to lend third party Harrington $3,000.00 dollars, for the purpose of repairing his 1993 Delta 98 automobile. This harassment, went on for several hours, until, the Plaintiff conceded.

5. On or about, November 12th, 2002, the Plaintiff Richards, lent third party Harrington, $5,000.00 dollars, for fall tuition at Carthage College, Kenosha Wisconsin. This transaction once again occurred at the Plaintiff's home located at 2408 Aspen Drive, Woodstock, Illinois. The plaintiff had third party, Harrington sign a promissory note, and this money was borrowed from his Harris Unsecured Banking loan account (Acct # 029-0008-100238438).

6. On or about, November 15th, 2002, Plaintiff Richards was harassed and threatened again, in the Dominick's Parking lot, at 2:00a.m. by third party Harrington, to lend third party Harrington $750.00 dollars for various needs. This time, after police officer, pulled up behind, the automobile, to investigate, why there has been a car, with two individuals, sitting in the car for two hours, the third party pulled a sheath knife, and twirling the knife, in his hands.

7. On or about, November 18th, 2002, Plaintiff Richards, was coerced by third party Harrington to switch the visiting sites, from McHenry and Woodstock, Illinois, ever since, the first visit by the McHenry Police Officer, on

November 15th, 2002. The plaintiff was cajoled to take out a Harris Bank Unsecured loan, for $1,500.00 dollars to make repairs to a Delta 98 automobile.

8. On or about, November 23rd, 2002, the Plaintiff was forced to cash in his life insurance policy, that he possessed since he was born, a 41 year old policy, this occurred at 901 Corona Street, Round Lake Beach, Illinois, at the third party's parent's home. The cash value of this insurance policy was $2,800.00 dollars, and this money was allegedly was supposed to be used for Christmas shopping for his immediate and extended family.

9. On November 29th, 2002, the Plaintiff, informs third party Harrington, that the cash lending has to stop. That the Plaintiff need his money for his own needs, and would like to start getting paid back for some of this money that was lent to third party, Harrington. The Plaintiff borrowed third party Harrington . another $400.00 dollars, and that would have to be the limit.

10. On or about, December 13th, 2002, the Plaintiff against his will lent the third party Harrington another $750.00 dollars for the purpose of getting through the Christmas season, and that third party Harrington will get out and look for employment.

11. On or about, December 27th, 2002, the Plaintiff was under the impression that he would be taking a ski trip to Colorado, with third party Harrington, but at the last minute, third party Harrington, pulled th bait and switch, and forced the Plaintiff to lend the third party Harrington another $900.00 from his paycheck, so third party Harrington may take a trip to with his father, and his father's boyfriend.

12. On or about, January 2nd, 2003, the Plaintiff borrows third party Harrington $6,800.00 dollars from his 401(k) loan (loan number 12)(See Exhibit) This money was lent to pay for third party Harrington's spring semester tuition at Carthage College, Kenosha Wisconsin, a school, the Plaintiff discover from the Gurnee Police Department at a later date, that third party Harrington never attended or enrolled.

13. On or about, January 9th, 2003, the third party forced the Plaintiff Richards to pay $1,000.00 dollars for alleged damages to third party's brand new 2003 PT Cruisier, (which third party Harrington was conning another individual to obtain this vehicle, this vehicle was never owned by third party Harrington, which the Plaintiff was under the impression). This transaction occurred in Gurnee, Illinois, ever since the McHenry Police Department started additional surveillance of the Dominick's parking lot, at night.

6

14. On or about, January 10th, 2003, the Plaintiff lent third party Harrington another $750.00 dollars for miscellaneous expenses from his paycheck from Household International (Household Finance).

15. On or about, January 17th, 18th, 23rd, 24th, and February 7th, 2003, the Plaintiff borrowed money from several payday loan places including Short Term Loan, Universal Cash Express, and U.S. Cash Express, and American Cash-N-Go for the purpose of repairing a universal place for both him and third party Harrington to reside at, this place would have been closer to the Plaintiff's employer Household International located in Prospect Heights, Illinois. The Plaintiff was unaware of third party Harrington having a wife or child. Until, this point, that the money, lent back in October and November was used to pay for his child's expenses.

16. On or about, February 14th, 2003, the Plaintiff lent $4,800.00 dollars to third party Harrington to pay for his Summer Semester Tuition, a school he never attended or enrolled.

17. On or about, March 1st, 2003, Plaintiff Richards went to Consumer Credit Counseling Services seeking advice about a debt reduction repayment plan. As this time, the Plaintiff's counselor Peggy Sarbaugh and Virginia Peschke thought the debt was at a magnitude, that they advised that the Plaintiff should seek advise from a bankruptcy attorney.

18. On or about, March 14th, 2003, Plaintiff Richards files bankruptcy in the Northern Illinois District Court – Western Division, located at 211 South Court Street, Rockford, Illinois 61101 under case number 03-71403, after consulting with three attorney's

19. On or about April 11th, 2003, Department of Justice – Trustee's Office sends the Plaintiff a letter stating that they believe that the Plaintiff may have sufficient income to file under a Chapter 13 bankruptcy plan. Their office requested additional information.

20. On or about, April 12th, 2003, Plaintiff request a 401(k) hardship withdrawal to purchase a mobile home to free up his income to debt ratio, to proceed under a Chapter 13 bankruptcy plan.

21. On or about, April 21st, 2003, Plaintiff Richards attends his "Meeting of the Creditor's (pursuant to Title 11 Section 341(a)) at which time he meets third party private bankruptcy trustee, James E. Stevens.

22. On or about, April 23rd, 2003, Plaintiff receives his application for the 401(k) hardship withdrawal.

7

23. On or about, April 23rd, 2003, the Department of Justice – Trustee's office replied back to the Plaintiff informing him that he should continue under a Chapter 7.

24. On or about, April 25th, 2003, Plaintiff Richards submits his 401(k) hardship withdrawal papers with corporate benefits, Micheal Carlson approves the Plaintiff's application.

25. On or about, April 29th, 2003, Plaintiff Richards receives his 401(k) hardship withdrawal check in the amount of $45,662.13 dollars for the purpose to purchase a mobile home to free up his income to debt ratio to repay his creditors in a Chapter 13 bankruptcy plan.

26. On or about, April 29th, 2003, Plaintiff Richards in conjunction with Harris Bank branch manager Thomas Stronner were depositing the check into a savings account when third party Harrington interfered with the Plaintiff's prospective contractual agreement by phone harassment. Plaintiff Richards entrusted the check $45,662.13 dollars to Harrington whose intentions were to permanently deprive the Plaintiff of his funds.

27. On or about, May 6th, 2003, third party's father informs plaintiff Richards that his son may have stolen the funds from Plaintiff Richards.

28. During the time period of May 6th, 2003 through May 9th, 2003, third party Harrington removes the remaining $29,000.00 dollars from the bank with the intent to impede the Plaintiff Richards from recovering the remaining funds.

29. On or about, May 10th, 2003, after determining that the funds were stolen, Plaintiff Richards files a police report with Gurnee Police Department, in conjunction with third party's father. The Police Report was based on the hearsay intentions of third party Harrington using the funds for tuition at Carthage College a school he never attended or enrolled and not based on personal knowledge that the funds were going to be used to purchase a mobile home to repay his creditors.

30. On or about, May 21st, 2003, Plaintiff Richards files a motion to recover the stolen property from third party, Harrington.

31. On May 28th, 2003, Plaintiff Richards motion to recover the stolen property is heard, Plaintiff informs the bankruptcy trustee about the stolen property.

32. On or about, June 10th, 2003, third party Stevens files a motion to rescind the "No Asset Report"

8

33. On or about, June 11th, 2003, third party Stevens files an adversary complaint to recover the stolen property under Title 11 Section 548 under case number 03A7063 in the amount of $36,000.00 dollars.

34. On or about, July 28th, 2003, Lake County State's Attorney's office arrest third party Harrington on the theft of the $45,662.13 dollar, the arrest was based on third party's hearsay intentions of using the money for tuition at Carthage College, a school he never attended or enrolled not on personal knowledge that the funds were going to be used to purchase a mobile home to free up his income to debt ratio to repay his creditors.

35. On or about, October 23rd, 2003, Plaintiff Richards after discovering his mistakes in the indictment, faxed actual knowledge of the crime victim's act to Lake County Prosecutor, with the "Right to Communicate with the Prosecutor" highlighted in bold.

36. On or about, November 3rd, 2003, the Bankruptcy Judge Manual Barbosa enters a second judgment against third party Harrington for the funds (cash) stolen by third party Harrington in the amount of approximately $42,000.00 in adversary hearing.

37. On or about, November 26th, 2003, the Bankruptcy Trustee files a Citation to Discover Assets, in the Northern Illinois Bankruptcy Court, located at 211 South Court Street, Rockford, Illinois 61101, against third party Harrington to find what assets are still remaining. Proceedings after that, the Trustee attempted to discover what money, was in the third party's bank account.

## SHORT ARGUMENT

The Plaintiff-Debtor contends that the Honorable Judge Manual Barbosa abused his discretion, in denying the Plaintiff-Debtor an opportunity reopen his bankruptcy case under Title 11 U.S.C.§350(b), to modify the bankruptcy discharge injunction under Title 11 U.S.C. §727. The Honorable Judge Manual Barbosa revoked the bankruptcy discharge on February 9th, 2005, after an evidentiary hearing, that was held on January 25th, 2005. The purported intent was the alleged source of contact, and the surrounding circumstances. The Bankruptcy Trustee James E. Stevens and Honorable Judge Manual Barbosa, believed that the Plaintiff took out a $45,662.13 dollar exempt 401(k) withdrawal, after filing bankruptcy, and passed these funds from himself to third party, Donald James Harrington, with the intent to impede the bankruptcy trustee, from using these funds to repay the creditors, who filed their claims in 2006 in the total amount of $62,000.00 dollars.

# ARGUMENT

Section 350(b) of the Bankruptcy Code provides that "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause". It is a settled principle of bankruptcy law that questions of whether to reopen cases are within the sound discretion of the bankruptcy judge, and depends on the facts or circumstances of the individual case. Hawkins Vs. Landmark Finance Co. 727 F.2d 324, 326 (4th Cir. 1984); In Re Grubbs, 45 B.R. 674 (Bankr. W.D.Va. 1985) In Re: McNeil 8 B.C.D. 114 (Bankr.S.D.NY 1981); In Re: Broomfield 3 B.C.D. 760 (Bankr.S.D.NY 1977) In Re: Castleberry 3 B.C.D. 6 (Bankr.N.D.GA 1977) See also In Re Halloway 10 B.R. 744 (Bankr.D.RI 1981).

Section 727(d)(1) of the Code states in pertinent part –

> (d) On request of the trustee, a creditor, of the United States Trustee, and after notice and a hearing, the Court shall revoke a discharge granted under subsection (a) of this section if –
>
> 11 U.S.C. §727(d)(1).

The provisions for revocation of a debtor's discharge is construed strictly against the objecting party and in favor of the debtor. Mazer Vs. Jones (In Re: Jones), 178 B.R. 1, 3 (Bankr.D.N.M.1995). The objecting party bears the burden of proof in a Section 727(d)(1) action. Matter of Yonikus 974 F.2d 901, 904 (7th Cir. 1992)(citing Werner Vs. Puente (In Re: Puente), 49 B.R. 966, 968 (Bankr.W.D.N.Y.1985)). A split in authority, however, exists regarding the burden of proof necessary to establish the elements of section 727(d). Some courts apply a preponderance of the evidence standard. See e.g.

First National Bank of Gordon Vs. Serafini (In Re: Serafini), 938 F.2d 1156, 1157 (10th

Cir 1991); Bowman Vs. Bell Valley Bank (In Re: Bowman) 173 B.R. 922, 925 (9th Cir.

BAP 1994); United States Vs. Walters (In Re Walters), 176 B.R. 835, 875

(Bankr.N.D.Ind.1994) Other courts require a clear and convincing standard. See e.g.

Drewes Vs. Magnuson (In Re Magnuson) 113 B.R. 555, 558 (Bankr.D.N.D. 1989); Bear

Stearns & Co. Inc. Vs. Stein (In Re: Stein), 102 B.R. 363, 367 (Bankr. S.D.N.Y. 1989);

Hunter Vs. Hall (In Re: Hall); 84 B.R. 472, 474 (Bankr.N.D.Ohio 1987); Fout vs. Reece

(In Re: Reece), 73 B.R. 900, 902 (Bankr.N.D.Ohio 1987); In Re: Kirschner, 46 B.R. 583,

586 (Bankr.E.D.N.Y.1985). The court in In Re: Reese, 203 B.R. 425 (Bankr.N.D.Ill.

1997) finds that a preponderance of the evidence standard is the appropriate burden of

proof. Walters 176 B.R. at 875. The Trustee must prove by a preponderance of the

evidence that the Debtors acquired property of the estate and knowingly and fraudulently

failed to report it or to deliver it to the Trustee.

     The Seventh Circuit in Yonikus set forth the ways the Trustee can establish fraud:

> The trustee may prove the debtor's fraud by evidence of the debtor's
> awareness of the omitted asset by showing that the debtor knew that
> failure to list the asset could seriously mislead the trustee or that the debtor
> acted so recklessly in not reporting the asset that fraud is implied. The
> bankruptcy court's finding of fraudulent intent may be based on inferences
> drawn from a course of conduct. Additionally, fraudulent intent may also
> be inferred from all of the surrounding circumstances.

Yonikus 974 F.2d at 905-06 (citations omitted).

     Under Section 727(d)(1), the trustee, as the requested party, must not have known

of the debtor's fraud until after granting the discharge. In the case at bar, the Plaintiff was

granted his discharge on October 2nd, 2003. During the course of these proceedings there

was concurrent pending criminal case, against a third party, by the name of Donald James

Harrington, who stole $45,662.13 dollars from the plaintiff-debtor, money which was removed from his exempt E.R.I.S.A. 401(k) account, after the plaintiff filed bankruptcy, on March 14th, 2003. This money was going to be used to repay his creditors. But, the criminal case failed to fully prosecute third party, Donald James Harrington. This failure purported by all others involved, was because, they falsely believed, that the Plaintiff was using the courts for the furtherance of his relationship with Donald James Harrington, and not based on personal knowledge that the plaintiff merely reported the theft of the $5,000.00 dollars on November 12nd, 2002, $6,800.00 dollars on January 2nd, 2003, and $4,800.00 dollars on February 14th, 2003 for Fall, Spring, and Summer School tuition, at Carthage College, that third party Harrington was not attending or ever enrolled at. The Plaintiff was not able to determine the loss of this money was for legitimate purpose or if it was taken by deceptive measures. The other individuals involve believe that the debtor was passing of the $45,662.13 dollars from the Plaintiff to third party Donald James Harrington, with the intent to deceive bankruptcy trustee James E. Stevens.

The Bankruptcy Rules clearly indicate that one of the duties of the debtor is to cooperate with the trustee in the administration of the estate. Fed.R.Bankr.P. 4002(4). Furthermore, courts addressing other subsections of section 727 conclude that a debtor is under affirmative duty to cooperate with the trustee by providing all requested information, and that failure to comply constitutes grounds for denial of discharge. See e.g. Thaler Vs. Erdheim (In Re; Erdheim), 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996)(Section 727(a)(4)(D))(citations omitted).

Here, the actions of the Debtor's actions were cooperative, after, the United States Trustee requested additional information to determine if the plaintiff could proceed under

a Chapter 13 bankruptcy plan, the debtor, moved to withdraw funds from his 401(k) to purchase a mobile home, to free up his income to debt ratio, to work operate under a Chapter 13 bankruptcy plan. After, the funds, were stolen by third party, Donald James Harrington, he reported the theft to the bankruptcy court. He may have made a very broad statement, but that unfortunately, is part of the debtor's way of computer programming, is to start with a computer shell, and then modify the computer program, to the point, where the program, does everything explicitly as instructed.

The Court recognizes that revocation of a discharge is a harsh measure and it runs contrary to the general concept of providing a debtor with a fresh start. Anderson Vs. Poole (In Re: Poole), 177 B.R. 235, 239 (Bankr.E.D.Pa.1995)(citations omitted); In Re: Flowers 55 B.R. 661, 662 (Bankr. M.D. Ala 1985). On the other hand, a debtor does not have a constitutional right to a discharge. United States Vs. Kras, 409 U.S. 434, 445, 93 S.Ct. 631, 638; 34 L.Ed.2d. 626 (1973). A debtor seeking the benefit of a discharge pays a price. That price is the performance of certain duties, such as cooperation with the Trustee.

One of the most common egregious omissions of a debtor in bankruptcy is the failure to list the entitlement to an asset. A debtor's failure to reveal assets and their delay in turning over pertinent documents is tantamount to concealment. Concealment of assets alone is sufficient to deny a discharge. Watson Vs. Jackson (In Re: Jackson) 141 B.R. 702, 706 (Bankr.D.Ariz.1992). In the realm of revocation of a discharge, concealment of assets is sufficient to find fraudulent intent on the part of Debtors See Yonikus, supra.

14

**CONCLUSION**

Therefore, the Debtor, Terence Bruce Richards, respectively request that this

Honorable Court, **REVERSE** the decision of the Honorable Judge Manual Barbosa, and

**REMAND,** this case for further proceedings on the issue of intent in the Bankruptcy

Court, or in the alternative, **REINSTATE,** the Debtor's bankruptcy discharge.


Terence Bruce Richards

---

**CERTIFICATE OF SERVICE**


I, Terence Bruce Richards, swear under penalty of perjury, that I have served a

true and correct copy of this document on the United Sates Trustee's Office and James E.

Stevens at their respective addresses of


by depositing a true and correct copy in the United States post office box located at 3001

North Clark Street, Chicago, Illinois 60657, on the _____ day of _____, 2008.


Terence Bruce Richards

15

## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 03 BK 71403 |
|---|---|---|---|
| **DATE** | June 4, 2008 | **ADVERSARY NO.** | |
| **CASE TITLE** | In re Terence Bruce Richards | | |

**DOCKET ENTRY TEXT**

The motion of Debtor to reopen Chapter 7 case is denied.

■ [ For further details see text below.]

## STATEMENT

This matter comes before the Court for ruling on a Motion to Reopen the Bankruptcy Estate pursuant to 11 U.S.C. § 350. Section 350 provides in relevant part that a case " may be reopened in a court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause". The debtor's motion is accompanied by an attached copy of the District Court's order of May 1, 2008 dismissing an appeal in case no. 07 C 50183 wherein the District Court states that appellant has failed to identify any existing order from which an appeal is being made. From the supporting memoranda, this Court can conclude that the movant is seeking to reopen for purposes of somehow relitigating the 11 USC § 727(d) complaint which was brought against him in an adversary complaint filed by the trustee.

The Court would point out at the outset that a motion to reopen an estate is a completely distinct matter from a procedural motion to obtain relief from a judgment or otherwise attack an adversarial judgment within a bankruptcy case. Thus, to reopen the case as the motion seeks to do, would not grant the movant the relief of reopening the adversary case which he apparently wishes to revisit. The reopening of a bankruptcy estate would accomplish nothing where a judgment stands denying the debtor a discharge.

Thus, this Court must conclude that the movant has failed to show cause as required under § 350 for the relief sought. Additionally, the Court must note that the offensive allegations made within the supporting memorandum by the movant directed to this Court are not only an indication of the lack of good faith and

## STATEMENT

merit in the pursuit of these pleadings, but constitute sanctionable conduct which this Court will not tolerate. The Court is cognizant of the difficult personal circumstances which the movant has endured and thus will satisfy itself with a strong admonition on this occasion stating that if such conduct is repeated, the Court will employ the strongest sanctions available to protect the dignity of the Court and demonstrate that this behavior has no place within our system of litigation.

Debtor's motion to reopen will be denied.

-2-

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| In re: | **Bankruptcy No.  03 - 71403** |
| **TERENCE BRUCE RICHARDS,** | **Chapter 7** |
| Debtor. | **Judge Manuel Barbosa** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Order denying debtor's motion to reopen has

been served by mailing a copy of same via First Class Mail on June 5, 2008 addressed to the

following:

Terence Bruce Richards
105 South Ashland Ave.
Chicago, IL 60607

Office of the U. S. Trustee
780 Regent Street, Suite 304
Madison, Wisconsin 53715

*M. Kneypol.*

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUN 0 5 2008

KENNETH S. GARDNER, CLERK

BY_____
    DEPUTY CLERK

# United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 03 BK 71403 |
|---|---|---|---|
| **DATE** | June 4, 2008 | **ADVERSARY NO.** | |
| **CASE TITLE** | In re Terence Bruce Richards | | |

## DOCKET ENTRY TEXT

The motion of Debtor for leave to appeal in forma pauperis is denied.

■[ For further details see text below.]

## STATEMENT

This matter has come before the Court on a motion for leave to appeal in forma pauperis. The motion is brought pursuant to 28 U.S.C. § 1915(a)(1) and 28 U.S.C. § 1930(f). Section 1915 pertains to appeals by prisoners, and the Court will assume for purposes of this motion that the movant qualifies for that status although his motion states that he is presently at a halfway house, but his affidavit also indicates a legal residence of Ashland Correctional Institution in Ashland, Kentucky. The movant has provided a form affidavit which appears to comply with the requirements of § 1915(a)(1). Under subsection (2), there is the additional requirement that there be a certified copy of the trust fund account or the institutional equivalent for the prisoner for the six-month period immediately preceding the filing of the complaint or notice of appeal. The affidavit is nonetheless fairly comprehensive and indicates that the movant has earned $10 per month during the past 12 months and the Court will assume that any residual amounts held by the debtor are negligible or would have otherwise been reflected in the affidavit.

This Court further notes that 28 U.S.C. § 1915(3) states: "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." This Court notes that on May 1, 2008 the District Court for the Northern District of Illinois, Western Division, dismissed an appeal taken by the movant for various procedural deficiencies. That case was 07 C 50183. The Court notes that while the movant has detailed to some extent the applicable standards for granting leave to appeal in forma pauperis, he has failed to identify any particular appealable order which would be the subject of his appeal or any other matter ruled on by this Court from which a timely appeal may be taken.

-1-

## STATEMENT

Because this pleading does not articulate the pursuit of a final, appealable order and the Court takes notice of the frivolous and offensive nature of other allegations made in accompanying pleadings filed by the movant, the Court concludes that it cannot certify as required by 11 U.S.C. § 1915(3) that this appeal is being taken in good faith. Accordingly, the motion is denied.

-2-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT COURT
OF ILLINOIS - WESTERN

In Re:                                    )
                                          ) Case Number 03 B 71403
       Terence Bruce Richards             )
                                          )

### MOTION TO REOPEN BANKRUPTCY ESTATE
### PURSUANT TO TITLE 11 U.S.C. 350

       Plaintiff, Terence Bruce Richards, pursuant to 28 U.S.C. 1915

moves this Court for an order permitting him to reopen his case

pursuant Title 11 U.S.C. 350.

                              Respectively submitted,

                              Terence Bruce Richards
                              Ashland Federal Correctional Inst.
                              P. O. Box 6001
                              Ashland, Kentucky 41105-6001



                         **FILED**
                  UNITED STATES BANKRUPTCY COURT
                  NORTHERN DISTRICT OF ILLINOIS

                         MAY 1 2 2008

                  KENNETH S. GARDNER, CLERK
                  BY_____
                         DEPUTY CLERK

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT COURT
OF ILLINOIS — WESTERN

In Re:                                              )
                                                    ) Case Number 03 B 71403
     Terence Bruce Richards                         )
                                                    )

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
MAY 1 2 2008
KENNETH S. GARDNER, CLERK
BY_____
DEPUTY CLERK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO REOPEN CASE PURSUANT TO
TITLE 11 U.S.C. §350

### STANDARD REVIEW

The standard of review of a bankruptcy court's denial of a motion to

reopen a bankruptcy estate is abuse of discreation. See Dworsky Vs. Canal

Street Ltd. Partnership (In Re: Canal Street Ltd. Partnership) 269 B.R. 375,

379 (9th Cir. BAP 2001); Woods Vs. Kenan (In Re: Woods) 178 F.3d 770, 778

(10th Cir. 1999); Citizen's Bank & Trust Co. Vs. Case (In Re: Case) 937 F.2d

1014, 1018 (5th Cir. 1991). Hawkins Vs. Landmark Fin. Co. (In Re: Hawkins),

727 F.2d 324, 326-27 (4th Cir. 1984). The District Court, Appellate Court,

and Supreme Court may not reverse the bankruptcy court's ruling unless,

there is a "definite and firm conviction that a bankruptcy court's ruling  unless,

there is a 'definite and firm conviction that a bankruptcy court committed

a clear error of judgment in the conclusion it reached upon weighing of the

relevant factors". In Re: Canal Street 269 B.R. at 379.

### APPLICABLE STATUTE

The relevant statute 11 U.S.C. §350(b), provides that "[a] case may

be reopened in the court in which such a case was closed to administer

assets, to accord relief to the debtor, or for other cause". The Plaintiff

contends that the bankruptcy court may reopen the Plaintiff's case to accord

relief to the debtor, Terence Bruce Richards, for the the Bankruptcy Court

abused it's discreation, when it ruled on matters outside of the record,

1

The Bankruptcy code does not define "other cause". A decision to reopen a case for "other cause" lies with the discreation of the bankruptcy court and will be reversed only for an abuse of that discreation. See e.g. Hawkins Vs. Lanmark Finance Corp. 727 F.2d 324, 326 (4th Cir. 1984); In Re: Thomas 204 F.2d 788, 791 (7th Cir. 1953). In exercising its discreation to reopen a case, "the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice". In Re: Stark 717 F.2d 322, 323 (7th Cir. 1983)(per curiam). The trend in reopening cases under section 350(b) has thus been "to allow the bankruptcy judge broad discreation to weigh the equitable factors in each case". Micheal P. Saber, Section 350(b); The Law of Reopening, 5 Bankr. Dev.J. 63, 82 (1987)(collecting cases).

In Reopening estates, court was not limited to cases where new assets are found, but could be reopen estate for benefit of bankrupt where equity required it. In Re Frank 278 F. 390 (1922). Elements of judicial economy and fairness to litigate can justify Bankruptcy Court's continuing exercise of jurisdiction by reopening [estate], under Title 11 U.S.C. §350(b), even if underlying case has been closed and matter is simply related to proceeding. In Re: Burch 88 B.R. 686 (1988).

In the present case, the Barkruptcy Judge has been prejudicial against the debtor, the bankruptcy judge feels, that the Plaintiff was interfering with a intra-racial marriage. The Bankruptcy Judge Manual Barbosa is a hispanic, and the caucasion individual who stole over $100,000.00 dollars from the Plaintiff, married, a hispanic wife, who gave birth to a hispanic child. The bankruptcy judge has been preventing the case from being ruled on the merits, and has been preventing the bankruptcy case from proceeding on the merits.

2

As stated on the District Court Appellate form, On August 6th, 2007,
appellant Terence Bruce Richards,filed a notice of appeal with the
United States Bankruptcy Court of the Northern District of Illinois.
In his notice of appeal, appellant states he is appealing "from the
final judgment entered in the action on the 1st day of August, 2007". On
November 5th, 2007, appellant filed a motion to stay his appeal so that he
may "exhaust his administrative remedies for the purpose to build a
record, and give the individual a chance to address the issue". Since, the
Bankruptcy Court Judge Manual Barbosa is a criminal, the plaintiff has
been afraid for his life, for the past 3 years, and afraid to confront
the criminal Bankruptcy Judge, Manual Barbosa. The Bankruptcy Judge
Manual Barbosa believes in promoting criminal activity, and not to promote
justice. The plaintiff has been afraid for his life, since January 25th, 2005.
The Plaintiff, was diagnosed with a pituitary tumor, in 2001, and the
degree of the tumor has grown in size. The Bankruptcy Judge Manual
Barbosa believes in criminal activity, is the correct way to build your
life. Just, as Donald James Harrington, was building his life, to support
his family, and get ahead in life. It makes the Debtor, believe, that the
Honorable Judge Manual Barbosa, grew up in the mexican ghetto's of Kane
County, and built his life, as a Bankruptcy Judge, by stealing, and defrauding
both Saint Benedictine University, and John Marshall Law school.

The District Court order, demonstrates, that the Bankruptcy Judge
Manual Barbosa, has been causing a delay in the debtor, to bring his
case to merit, by the showing of the "Although appellant's appeal has been
pending for nine months". The Debtor  Richards, was not going to engage in
the "Cat" and "mouse" game of going between the district Court and the Bankruptcy
Court, to determine who had jurisdiction the the case. Judge Barbosa has
demonstarted to the debtor, Richards, that Judge Barbosa has done this to

3

other debtors, that appeared before him. Foe example, Mr. Valenti, in his 1993 case, which to the debtor's knowledge dragged to on to 2004. The Debtor, Richards, will not engage in this type of case chasing with the Court's. Judge Manual Barbosa is a criminal who arose as a lawyer to the Judgeship, by wrongful means.

In the present case, the debtor had his financial property abandoning and given to another individual, in violation of his fifth amendment right of the United States Constitution. According to American Jurispudence, The concept of liberal construction of pleadings is often referred to as the "notice pleading" theory, and the jurisdictions adhering thereto as notice pleading jurisdictions, because the primary purpose of a pleading is to give fair notice to the adverse parties of the claim against them. In other words, the petition should not leave any uncertainty as to the theory on which the pleader wishes to proceed. The motion under Title 11 U.S.C. 554, and the complaint under Title 11 U.S.C. §727(d), never stated, that the trustee, believed 'that the debtor was using the court for the furtherance of his erlationship rather than using the courts for the purpose to recover his stolen property". At the hearing, the bankruptcy trustee, made a statement that the debtor was in enough criminal matter proceeding in the Lake County Courthouse. However, upon the request of a copy of this transcript, the bankruptcy Court to cover his criminal activity, refused to give the debtor a true and correct certified copy of those transcripts. This is to conceal his criminal activity. This makes the Bankruptcy Judge Manual Barbosa just as culpable, as the criminal himself. To reiterate, Judge Manual Barbosa is a criminal. Plain and simple. This a total abuse of discreation.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT COURT
OF ILLINOIS – WESTERN**

In Re:                                          )
                                                ) Case Number 03 B 71403
        Terence Bruce Richards                  )
                                                )

### ORDER

Plaintiff, Terence Bruce Richards, a prisoner with the Federal
Bureau of Prison systems, has submitted a request for leave to
proceed in forma pauperis. Since there appears to have been abused
of the bankruptcy Court's (Judge Barbosa's) discretion in his decision
making, and fraudulent misrepresentation of the bankruptcy trustee's
representations to this court, on the Plaintiff's bankruptcy discharge,
that was held on January 25th, 2005, and February 9th, 2005. The
debtor, Terence Bruce Richards was never given proper notice, or an
opportunity to be heard, on the bankruptcy trustee's alleged motive,
of the debtor's alleged bankruptcy discharge.


                                    Honorable Judge Barbosa

# United States Bankruptcy Court
NORTHERN DISTRICT OF ILLINOIS
211 S Court Street
Rockford, IL 61101
Kenneth S. Gardner, Bankruptcy Clerk

Date                                    June 9, 2008

Case Number                             03-71403

Case Name                               Terence Bruce Richards

Notice of Appeal Filed                  June 9, 2008

Notice of Cross Appeal Filed

Dear Sir/Madam:

A Notice of Appeal having been filed pursuant to **Bankruptcy Rule 8002**, please be notified that the Record on Appeal will be transmitted to the United States District Court when the record is complete for the purpose of appeal.

**Bankruptcy Rule 8006** requires that, within ten (10) days of the filing of the Notice of Appeal, the Appellant must file the following with the Clerk of the United States Bankruptcy Court:

► A Designation of the Content of the Record on Appeal
► A Statement of the Issues to be presented on Appeal

If the above are not filed within the ten (10) day time period as provided by **Bankruptcy Rule 8006**, the appeal will not be perfected.

Any party filing a designation of the items to be included in the record shall provide to the clerk a copy of the items designated. If the party fails to provide the copy of the items designated, the clerk shall prepare the copy at the party's expense.

**Bankruptcy Rule 8006** further states: If the record designated by any party includes a transcript of any proceeding, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and made satisfactory arrangements for payment of its cost.

**Local Rule 9070-1**(B) states: Upon request, parties shall make the exhibits and transcripts or copies thereof available to any other party to copy at its expense.

By Deputy Clerk

Cindy Shabez

cc: Bankruptcy Judge & Attorneys of Record

Revised (1/31/08)rj

03-71403

## STATEMENT OF ISSUES

WHETHER THE BANKRUPTCY JUDGE MANUAL BARBOSA ABUSED HIS DISCREATION IN DENYING THE PLAINTIFF'S MOTION TO REOPEN HIS BANKRUPTCY PROCEEDINGS.

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUN 0 9 2008

KENNETH S. GARDNER, CLERK
BY_____
DEPUTY CLERK

1               UNITED STATES BANKRUPTCY COURT

2                NORTHERN DISTRICT OF ILLINOIS

3                     WESTERN DIVISION

4

5      In Re: Terrence Richards        )
                                       )
6                                      )
                                       )
7

8
           The hearing in the above-captioned matter was
9      taken before the Honorable Manuel Barbosa by Jennifer
       Williams, Certified Shorthand Reporter, on May 21, 2008
10     at the United States Federal Courthouse, 211 South
       Court Street, Courtroom 115, Rockford, Illinois.
11

12                    A P P E A R A N C E S

13

14     MR. JIM STEVENS
       Attorney at Law
15     Barrick, Switzer, Long, Balsley & Van Evera
       6833 Stalter Drive
16     Rockford, IL 61108

17

18     MS. CAROL RYCHEK
       Attorney for the United States Trustee
19

20     MR. TERRENCE RICHARDS
       Appearing Pro Se
21

22

23

24

1          THE CLERK: Recalls from 9:30.  Recalling

2    earlier matters on the 9:30 call. Terrence Richards,

3    7143.

4          MR. STEVENS: Jim Stevens, the old Chapter 7

5    Trustee.

6          MR. RICHARDS: Terrence Richards.

7          MS. RYCHEK: Carol Rychek on behalf the U.S.

8    Trustee.

9          THE COURT: Good morning, Mr. Richards.

10         We are here this morning on your motion for

11   leave to file In Forma Pauperis.

12         MR. RICHARDS: In Forma Pauperis is just to

13   waive the fee.  It is not to ask for an excuse to not

14   pay the fee.  I do have $48,000.00, not in my

15   possession, that is in the Social Security's

16   possession.

17         THE COURT: I'm sorry.  I missed that last

18   thing you said.  Can you repeat?

19         MR. RICHARDS: The Social Security has

20   $48,000.00 of mine. They are in the process of going

21   through the payment center to send it out to me.  Can I

22   give you a copy of my work order to show you the money?

23         THE COURT: Sure.

24         MR. RICHARDS: I have a copy for you.

1        MR. STEVENS:  That is okay.

2        MR. RICHARDS: They owe me from 2004--  Except

3  for the year of 2007, they owe me for 2004, 2005, 2006

4  and up through when they paid me this year.

5        THE COURT:  Okay.  I've just taken a quick

6  glance at this and it looks like you have benefits

7  commencing June of 2006, $1,790.00 and apparently for

8  each month.  I have not done the calculation, but it

9  does sound like a rather substantial--

10       MR. RICHARDS: Right now I don't have any

11  money at all.  I am wearing somebody else's clothes and

12  I have a prescription that I can't fill.  And the place

13  I'm living at is trying to get it filled for me, but I

14  have no money and I would like to proceed to possibly

15  prevail in the case.

16       THE COURT:  We have present the former

17  Chapter 7 Trustee, as well as the U.S. Trustee's

18  counsel.

19       MR. STEVENS: Your Honor, I think Mr. Richards

20  has a misconception of the whole case.  The case is

21  concluded and I think you want to reopen the case so

22  that I'll go after and try to administer assets or

23  another trustee is appointed to go after and administer

24  assets.  I don't want those assets and you can go after

1   them now.  So, I mean, you don't need the bankruptcy

2   trustee to go and do all that.  And you are spending an

3   awful lot of time filing pleadings and filing motions

4   when you have the ability to go and force your State

5   Court judgment against this gentleman and do all this.

6          MR. RICHARDS: Excuse me, Your Honor.  The

7   motion to reopen is a very broad statement and it is

8   not very specific and not very detailed as to exactly

9   what I want. What I'm asking for is to possibly get my

10  bankruptcy discharge reinstated so I can possibly move

11  on to studying architecture and going to John Marshall

12  to study law and get into real estate law.  But first I

13  need to get my accounting degree.  And before I can do

14  that, I would like to prove I didn't commit any fraud,

15  actual fraud. There might be a implied fraud because of

16  my background in 20 years in computer finance industry

17  and still that is just knowledge.  And I didn't have

18  any specific purpose to actually commit actual fraud so

19  that is just implied fraud.

20         MR. STEVENS: I don't know that I even have

21  any standing, Your Honor, because I'm no longer the

22  Trustee here, but I get all the pleadings and, in

23  effect, I happen to be a defendant on some lawsuits

24  that Mr. Richards likes to file in Federal Court, but I

1  think too much time has probably gone by to vacate your

2  order.

3          THE COURT: The motion I have before me is for

4  leave to file In Forma Pauperis. I don't believe I have

5  a motion to reconsider in front of me or a motion to

6  vacate. And, frankly, I haven't even looked at your

7  cited statutes for the authorities or how I am to

8  employ that authority to give you leave to file In

9  Forma Pauperis.

10          MR. RICHARDS: Under Title 8, Section 1930

11          THE COURT: I see that you site that section

12  and it's unclear to me exactly what it was that you

13  wish to appeal, although you now have alluded to the

14  adversary that deprived you of a discharge. Is there

15  something the U.S. Trustee's office wishes to add?

16          MS. RYCHEK: No, Your Honor. We would second

17  what Mr. Stevens already stated.

18          THE COURT: Okay. Mr. Richards, I want to

19  take time to look at the two sections that you cited to

20  see if-- I mean, if you wish to file an appeal of that

21  adversary and it's considered in any way timely and I

22  have the authority to grant you In Forma Pauperis based

23  on what you told me, I would probably be inclined to do

24  it. I think as a practical matter, the advice you got

1 from the Trustee here, if your desire is to go after

2 any assets you lost to an individual in this case, you

3 are free to do this.  You don't need to take this route

4 and all the steps to do that.

5    MR. RICHARDS: I understand that.  I'm looking

6 into the legal significance of this and looking at my

7 future.  I don't want to go back and try to reopen

8 cases and try to go back and recover money.  Like I

9 said, I can do that for the next 20 years if I wish so

10 and am pleased to do so even if it wastes my time to do

11 so.  When you abandoned the property back, then he

12 filed a motion stating it was inconvenient and

13 burdensome to go after someone who was not cooperating

14 with the Court.  And I was getting threats from my

15 employers under duress saying that if I didn't stop

16 these proceedings, I will lose my employment, which

17 happened anyway.  And I was under duress at the time

18 from many different sources.

19    THE COURT: I understand you have gone through

20 a lot.  I want to take this under advisement because,

21 quite honestly, I've not had an opportunity to take a

22 close look at the sections that you cite here.  And I

23 will take a look at that and I will issue a written

24 order within 14 days.  I will send a copy to you and

1   Mr. Stevens and the U.S. Trustee's office.

2           MR. STEVENS: Thank you, Your Honor.

3           THE COURT: Mr. Richards, I assume you would

4   like this back?

5           MR. RICHARDS: Yes. A

6   (Whereupon the above held proceedings concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1  I, JENNIFER WILLIAMS, Certified Shorthand Reporter, do

2  hereby certify that I am a court reporter doing in

3  shorthand the bankruptcy  hearing in the

4  above-mentioned matter and that the foregoing is a true

5  and correct transcript of my shorthand notes so taken

6  aforesaid to the best of my abilities.

7       I further certify that I am neither counsel

8  for nor related to nor employed by any of the parties

9  to this action and that I am not a relative or employee

10  of any counsel employed by the parties hereto or

11  financially interested in the action. Dated at

12  Rockford, Illinois, the 29th day of June, 2008.

13

14

15

16

17      Jennifer Williams, CSR, RPR.

18

19

20

21

22

23

24

IN THE BANKRUPTCY COURT OF NORTHERN DISTRICT OF ILLINOIS

WESTERN DIVISION

IN RE

TERENCE BRUCE RICHARDS

CASE # 03 B 71403

NOTICE OF MOTION

THE DEBTOR HEREBY INFORMS ALL PARTIES THAT A MOTION
HAS BEEN SCHEDULED TO BE HEARD BEFORE JUDGE BARBOSA
OR ANY JUDGE SITTING IN HIS STEAD ON JULY 22ND, 2007 AT
10:00 AM.

*Terence Bruce Richards*

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUL 1 8 2007

KENNETH S. GARDNER, CLERK
BY_____
DEPUTY CLERK

IN THE BANKRUPTCY COURT OF NORTHERN DISTRICT OF ILLINOIS

WESTERN DIVISION

IN RE

TERENCE BRUCE RICHARDS

CASE # 63B71403

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
JUL 1 8 2007
KENNETH S. GARDNER, CLERK
BY
DEPUTY CLERK

MOTION TO REOPEN CASE

AND MOTION FOR REHEARING

NOW COMES TERENCE BRUCE RICHARDS BY AND THROUGH HIS OWN REPRESENTATION HEREBY STATES AS FOLLOWS:

1) A CASE MAY BE REOPEN IN THE COURT IN WHICH SUCH CASE WAS CLOSED TO ADMINISTER ASSETS, TO ACCORD RELIEF TO THE DEBTOR, OR FOR OTHER CAUSE  TITLE 11 SECTION 350(B)

TIME LIMITATION

THERE IS NO FORMAL TIME LIMITATION ON REOPENING CASE AND QUESTION OF WHETHER TO REOPEN IS DISCREATIONARY UNITED STATES EX REL BELL VS RUNDY (IN RE RE W ENTERS)(1994) 181 B.R. 624

COURT DISCREATION

REOPENING OF CASE UNDER TITLE 11 U.S.C. §350 (B) RESTS WITHIN SOUND DISCREATION OF BANKRUPTCY COURT, AND CASE WILL BE REOPENED UPON SHOWING OF COMPELLING CIRCUMSTANCES MOREOVER, BANKRUPTCY COURTS REFUSING TO REOPEN CLOSED CASE CAN BE OVERTURNED ONLY UPON SHOWING OF ABUSE OF DISCREATION  IN RE PAGAN (1978) 59 B.R. 394

2.) THE CASE HAS NOT BEEN FULLY ADMINISTERED CONSTITUTIONALLY.
THE COURT HELD AN UNCONSTITUTIONAL EVIDENTIARY HEARING ON
ON JANUARY 25TH 2005, WITH THE INTENT TO HARM THE DEBTOR
ABUSING ITS DISCRETION, AND COMMITTING A FELONY AGAINST
THE DEBTOR.

IT IS DUTY OF BANKRUPTCY COURT TO REOPEN CLOSED
BANKRUPTCY ESTATE WHENEVER PRIMA FACIE PROOF WAS MADE
THAT ESTATE HAD NOT BEEN FULLY ADMINISTERED
IN RE THOMAS (1953) 204 F.2d 788 BANKRUPTCY CASE MAY BE
REOPENED UNDER 11 U.S.C.S. §350(b) WHERE THERE IS PRIMA FACIE
EVIDENCE THAT ASSETS HAVE NOT BEEN FULLY ADMINISTERED IN
RE SHONDEL (1991) 950 F.2d 1301 22 BCD 694 IN EXERCISING ITS
DISCRETION TO REOPEN A CASE "THE BANKRUPTCY COURT SHOULD
EXERCISE ITS EQUITABLE POWERS WITH RESPECT TO SUBSTANCE
AND NOT TECHNICAL CONSIDERATIONS THAT WILL PREVENT
SUBSTANTIAL JUSTICE IN RE STARK 717 F.2d 322.323
7TH CIR (1983)

3.) PROPER EQUITY WAS NOT ADMINISTERED IN THE CASE AT BAR.
IN REOPENING ESTATE COURT WAS NOT LIMITED TO CASE WHERE
NEW ASSETS ARE FOUND, BUT COULD REOPEN ESTATE FOR
BENEFIT OF BANKRUPT, WHERE EQUITY REQUIRED IT.

4.) THE DEBTOR WAS NEVER AFFORDED PROPER ADMINISTRATION OF JUSTICE

THE PLAINTIFF WAS DEPRIVED OF HIS INTANGIBLE ASSETS OF BANKRUPTCY

DISCHARGE WITHOUT DUE PROCESS OF THE LAW. THE COURT PURPORTED

THAT THE DEBTOR'S INTENT WAS

THE SOURCE OF CONTACT AND

SURROUNDING CIRCUMSTANCES

THE SUPREME COURT'S OBSERVATION UGRZA VS. HERNANDEZ Y MORALES

CONTROLS HERE "WHATEVER ELSE MAY BE UNCERTAIN ABOUT THE

DEFINITION OF THE TERM 'DUE PROCESS' OF THE LAW" ALL

AUTHORITIES AGREE THAT IT INHIBITS THE TAKING OF ONE

MAN'S PROPERTY AND GIVING IT TO ANOTHER CONTRARY TO

SETTLED USAGES AND MODES OF PROCEDURE AND WITHOUT

NOTICE OR AN OPPORTUNITY FOR A HEARING 230 U.S. 39; 161

33 S.CT. 1033, 1041  57 L.EO M27 (1912)

THE SUPREME COURT HAS DEFINED THE MINIMUM CONSTITUTIONAL

DICTATES OF DUE PROCESS IN FUENTES VS. SHEVIN 407 U.S. 67 92

92 S.CT. 1983 32 L.EO.2d 556 (1972) JUSTICE STEWART

OBSERVED THAT "FOR MORE THAN A CENTURY THE CENTRAL

MEANING OF PROCEDURAL DUE PROCESS HAS BEEN CLEAR PARTIES

WHOSE RIGHTS ARE AFFECTED ARE ENTITLED TO BE HEARD

AND IN ORDER THAT THEY MAY BE ENJOY THE RIGHT THEY

MUST BE FIRST TO BE NOTIFIED

To make out prima facie claim that they have been denied due process plaintiff must establish two elements (1) that their liberty or property interest have been invaded by government without opportunity to challenge that invasion and (2) that the purported justification for the invasion is at least plausibly disputable Jacobson vs Regional Planning Agency (1977) 588 F-2d 928

5.) Equitable Estoppel tolls the statute of limitations for the purpose to afford the injured party a chance to repair the harm caused by equitable estoppel

Therefore, the plaintiff respectively request that this honorable court grant the plaintiff's request to reopen the case, and a motion for rehearing

Terre Burn Richard

**United States Bankruptcy Court**
NORTHERN DISTRICT OF ILLINOIS
211 S Court Street
Rockford, IL 61101
Kenneth S. Gardner, Bankruptcy Clerk

Date                                    August 7, 2007

Case Number                             03-71403

Case Name                               Terence Bruce Richards

Notice of Appeal Filed                  August 6, 2007

Notice of Cross Appeal Filed

Dear Sir/Madam:

A Notice of Appeal having been filed pursuant to **Bankruptcy Rule 8002**, please be notified
that the Record on Appeal will be transmitted to the United States District Court when the
record is complete for the purpose of appeal.

**Bankruptcy Rule 8006** requires that, within ten (10) days of the filing of the Notice of Appeal,
the Appellant must file the following with the Clerk of the United States Bankruptcy Court:

   A Designation of the Content of the Record on Appeal
   A Statement of the Issues to be presented on Appeal

If the above are not filed within the ten (10) day time period as provided by **Bankruptcy Rule**
**8006**, the appeal will not be perfected.

Any party filing a designation of the items to be included in the record shall provide to the clerk
a copy of the items designated. If the party fails to provide the copy of the items designated, the
clerk shall prepare the copy at the party's expense.

**Bankruptcy Rule 8006** further states: If the record designated by any party includes a
transcript of any proceeding, the party shall, immediately after filing the designation, deliver to
the reporter and file with the clerk a written request for the transcript and made satisfactory
arrangements for payment of its cost.

**Local Rule 414 (B)** states: Upon request, parties shall make the exhibits and transcripts or
copies thereof available to any other party to copy at its expense to enable that party to
designate or prepare the record on appeal.

                                    By Deputy Clerk
                                                        Cindy Shabez

cc: Bankruptcy Judge & Attorneys of Record



## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 50183 | **DATE** | 5/1/2008 |
| **CASE TITLE** | Richards v. Stevens, et al. | | |

**DOCKET ENTRY TEXT:**

Appellant's motion to stay is denied. This case is dismissed. This case is closed.

Docketing to mail notices.

■[ For further details see text below.}

### STATEMENT

On August 6, 2007, appellant, Terence Bruce Richards, filed a notice of appeal with the United States Bankruptcy Court of the Northern District of Illinois. In his notice of appeal, appellant states he is appealing "from the final judgment entered in the action on the 1st day of August, 2007." On November 5, 2007, appellant filed a motion to stay his appeal so that he may "exhaust his administrative remedies for the purpose to build a record, and give the individual a chance to address the issue." The record on appeal does not reflect any order by the Bankruptcy Court entered on August 1, 2007. The Bankruptcy Court entered an order dismissing appellant's motion to reopen his Chapter 7 case on September 17, 2007.

United States District Courts have jurisdiction to hear appeals from final judgments, orders, and decrees of the Bankruptcy Court, and when leave of the district court is granted, from interlocutory orders and decrees. 28 U.S.C. § 158(a). Federal Rule of Bankruptcy Procedure 8001(a) requires that a notice of appeal (1) "conform substantially to the appropriate Official Form," and (2) "contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys." Fed. R. Bankr. P. 8001(a). The Official Form referenced in (1) is Official Bankruptcy Form 17, which has space for the docket number of the case, the chapter of the Bankruptcy Code the case involves, and the date of entry of the order being appealed. Fadayiro v. Ameriquest Mortgage Co., 371 F.3d 920, 922 (7th Cir. 2004). It is doubtful that a notice of appeal that fails to indicate the order appealed from could be thought to comply with the rule. Id.

In this case, appellant has not identified any existing order from which he appeals. The docket sheet in the record does not reflect any order entered, or hearing held on August 1, 2007.[1] As a result, this court cannot assess if the order appealed from is final or interlocutory, and thus, whether this court has jurisdiction to hear the appeal. Moreover, the court has no basis to conclude that the Bankruptcy Court's September 17, 2007 order is the subject of the appeal. Federal Rule of Bankruptcy Procedure 8006 requires that, within 10 days after filing the notice of appeal, the appellant shall file with the clerk a designation of items to be included in the record on appeal and a statement of issues presented. Fed. R. Bankr. P. 8006. Rule 8006 requires that the record on appeal to include the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court. Id. Any party filing a designation of items to be included in the record must

## STATEMENT

provide to the clerk a copy of the items designated. Id.

In this case, there is no indication that appellant filed a designation of items to be included in the record on appeal or a statement of issues presented. Although appellant has twice been ordered by the Magistrate Judge to provide a written status report, he has failed to do so, and thus, has not clarified what order he seeks to appeal. Moreover, in his motion for stay appellant only refers to orders entered by the Bankruptcy Court on January 25, 2005, and February 9, 2005. These orders are far outside of the time period for appeal set forth by Federal Rule of Bankruptcy Procedure 8002, which requires a notice of appeal be filed within 10 days of the date of the entry of the order from which the appeal arises. See Fed. R. Bankr. P. 8002.

"Failure to comply with Rule 8006 is not jurisdictional, but such a failure may still be the basis for dismissal of an appeal." In re Thompson, 4 F.3d 997, 1993 WL 347181, at *3 (7th Cir. Sept. 10, 1993); see also In re Manti, 4 F.3d 997, 1993 WL 326694, at *1 (7th Cir. Aug. 27, 1993). The failure to take the steps necessary to allow the clerk to transmit the record on appeal to the appellate court may warrant dismissal. Thompson, 1993 WL 347181, at *3. In this case, a dismissal is merited. See Manti, 1993 WL 326694, at *1-2 (concluding that, where the record before the district court was insufficient to enable it to conduct a meaningful review, dismissal was not an abuse of discretion); In re Opal, No. 02 C 3259, 2002 WL 1379134, at *1 (N.D. Ill. June 25, 2002) (concluding that dismissal of appeal was warranted where appellant failed to designate the contents of the record on appeal or file a statement of issues). Although appellant's appeal has been pending for nine months, he has failed to file a statement of issues, a designation of the record, a brief - as required by Federal Rule of Bankruptcy Procedure 8009, or even a status report requested by the Magistrate. He has not identified an order in the record which he seeks to appeal and has, thus, left the court without any means to determine its jurisdiction. As a result, the court finds appellant has failed to comply with both Rules 8001(a) and 8006. Accordingly, appellant's bankruptcy appeal is dismissed and this case is closed.

---

1. On his notice of appeal, appellant also failed to list the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys.

Form B18 (Official Form 18)(9/97)

# United States Bankruptcy Court

### Northern District of Illinois

*Western Division*
*211 S. Court Street*
*Rockford, IL 61101*

In Re:

Terence Bruce Richards
2408 Aspen Drive
Woodstock, IL 60098
SSN: 331–66–0642 EIN: N.A.
AKA: Terence B Richards
Terence Richards

Case No. :   03–71403
Chapter :   7
Judge :   Manuel Barbosa

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED :**

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

For the Court,

Kenneth S. Gardner, Clerk
United States Bankruptcy Court

Dated: October 2, 2003

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

EXHIBIT 3

FORM B18 continued (7/97)

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a discharged debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:]* A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the discharged the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts that are Not Discharged.

Some of the common types of debts which are not discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts that are in the nature of alimony, maintenance, or support;

c. Debts for most student loans;

d. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

e. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle while intoxicated;

f. Some debts which were not properly listed by the debtor;

g. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

h. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts.

This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.

| B104 | **ADVERSARY PROCEEDING COVER SHEET** | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|---|

| **PLAINTIFFS**<br>**JAMES E. STEVENS, Trustee** | **DEFENDANTS**<br>**TERENCE BRUCE RICHARDS**<br><br>## 04A7077 |
|---|---|

| Attorneys (Firm Name, Address, and Telephone No.)<br>TYLER A. MOORE<br>BARRICK, SWITZER, LONG, BALSLEY & VAN EVERA<br>One Madison-Rockford, IL 61104    (815) 962-6611 | Attorneys (If Known) |
|---|---|

| PARTY (Check one box only) | 1. U.S. Plaintiff | 2. U.S. Defendant | x | 3. U.S. Not A Party |
|---|---|---|---|---|

CAUSE OF ACTION (Write a brief statement of cause of action, including all U.S. Statutes Involved)
Complaint to Revoke Discharge

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUL 1 3 2004

KENNETH S. GARDNER, CLERK

BY NATURE OF SUIT
(Check the **one** most appropriate box only.)

| | |
|---|---|
| [ ] 454 To Recover Money or Property | [ ] 455 To revoke an order of confirmation Of a Chap. 11, Chap. 12, or Chap 13 Plan |
| [ ] 435 To Determine Validity, Priority, or Extent of a Lien or Other interest in Property | [ ] 426 To determine the dischargeability of a debt 11 U.S.C. §523 |
| [ ] 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property | [ ] 434 To obtain an injunction or other equitable relief |
| [x] 424 To object to or revoke a discharge 11 U.S.C. §727 | [ ] 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan |

[ ] 456 To obtain a declaratory judgment relating to any of foregoing causes of action
[ ] 459 To determine a claim or cause of action removed to a bankruptcy court
[ ] 498 Other (specify)

| **ORIGIN OF**<br>**PROCEEDINGS**<br>(Check one box only.) | [x] 1 Original<br>Proceeding | [ ] 2 Removed Proceeding | [ ] 4 Reinstated or Reopened | [ ] 5 Transferred from Another Bankruptcy Court | [ ] CHECK IF THIS IS A CLASS<br>ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| **DEMAND** | NEAREST THOUSAND<br>$60,000.00 | OTHER RELIEF SOUGHT - DISCHARGEABILITY | [ ] JURY<br>DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR – TERENCE BRUCE RICHARDS | BANKRUPTCY CASE No. 04 B 71403 | |
|---|---|---|
| CASE IS PENDING IN NORTHERN DISTRICT | DIVISIONAL OFFICE – WESTERN | NAME OF JUDGE – JUDGE BARBOSA |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| **FILING FEE** | (Check one box only) [x] FEE ATTACHED | [ ] FEE NOT REQUIRED | [ ] FEE IS DEFERRED |
|---|---|---|---|
| DATE – July __, 2004 | PRINT NAME – TYLER A. MOORE | SIGNATURE OF ATTORNEY |

B-104

## ADVERSARY PROCEEDING COVER SHEET (Reverse Side)

This cover sheet must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney) and submitted to the clerk of the court upon the filing of a complaint initiating an adversary proceeding.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. This form is required for the use of the clerk of the court to initiate the docket sheet and to prepare necessary indices and statistical records. A separate cover sheet must be submitted to the clerk of the court for each complaint filed. The form is largely self explanatory.

**Parties.** The names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if know. Following the heading "Party," check the appropriate box indicating whether the United States is a party named in the complaint.

**Cause of Action.** Give a brief description of the cause of action including all federal statutes involved. For example, "Complaint seeking damages for failure to disclose information, Consumer Credit Protection Act, 15 U.S.C. §1601 et seq.," or "Complaint by trustee to avoid a transfer of property by the debtor, 11 U.S.C. §544."

**Nature of Suit.** Place an "X" in the appropriate box. Only one box should be checked. If the cause fits more than one category or suit, select the most definitive.

**Origin of Proceedings.** Check the appropriate box to indicate the origin of the case:
1. Original Proceeding.
2. Removed from a State or District Court.
3. Reinstated or Reopened.
4. Transferred from Another Bankruptcy Court.

**Demand.** On the next line, state the dollar amount demanded in the complaint in thousands of dollars. For $1,000 enter "1", for $10,000 enter "10", for $100,000 enter "100", if $1,000,000, enter "1000". If $10,000,000 or more enter "9999". If the amount is less than $1,000, enter "0001". If no monetary demand is made, enter "XXX". If the plaintiff is seeking non-monetary relief, state the relief sought, such as injunction or foreclosure of a mortgage.

**Bankruptcy Case In Which This Adversary Proceeding Arises.** Enter the name of the debtor and the docket number of the bankruptcy case from which the proceeding now being filed arose. Beneath, enter the district and divisional office where the case was filed, and the name of the presiding judge.

**Related Adversary Proceedings.** State the names of the parties and the six digit adversary proceeding number from any adversary proceeding concerning the same two parties or the same property currently pending in any bankruptcy court. On the next line, enter the district where the related case is pending, and the name of the presiding judge.

**Filing Fee.** Check one box. The fee must be paid upon filing unless the plaintiff meets one of the following exceptions. The fee is not required if the plaintiff is the United States government or the debtor. If the plaintiff is the trustee or a debtor in possession, and there are no liquid funds in the estate, the filing fee may be deferred until there are funds in the estate. (In the event no funds are ever recovered for the estate, there will be no fee). There is no fee for adding a party after the adversary proceeding has been commenced.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the right of the last line of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is , not represented by an attorney, the plaintiff must sign.

The name of the signatory must be printed in the box to the left of the signature. The date of the signing must be indicated in the box on the far left of the last line.

F:\Vain\JES\TRUSTEE\O'SHAUGHNESSY\AdversaryProceedingSheet.doc

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| IN RE: | ) In Bankruptcy Under Chapter 7 |
| | ) |
| TERENCE BRUCE RICHARDS, | ) Case No. 03-B-71403 |
| | ) |
| _____Debtor._____ | ) |
| JAMES E. STEVENS, Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| TERENCE BRUCE RICHARDS, | ) |
| | ) |
| Debtor. | ) |

## COMPLAINT TO REVOKE DISCHARGE

NOW COMES JAMES E. STEVENS, Trustee, by and through his attorneys, BARRICK,

SWITZER, LONG, BALSLEY & VAN EVERA, and for his Complaint to Revoke Discharge,

respectfully states as follows:

### GENERAL ALLEGATIONS

1.    Plaintiff herein, JAMES E. STEVENS, Trustee (hereinafter "Trustee" or "Plaintiff")

is the duly appointed, qualified and acting Trustee of the bankruptcy estate of TERENCE

BRUCE RICHARDS.

2.    Defendant, TERENCE BRUCE RICHARDS, is the Debtor herein, having filed a

Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code on March 14, 2003.

3.    This matter is a core proceeding pursuant to 28 USC 157(b)(2).

4.    This Court has jurisdiction over this matter pursuant to 28 USC 1334.

5.    Venue is properly in this Court pursuant to 28 USC 1408-09.

6.    The relief requested by this Motion may be granted pursuant to 11 USC

727(d)(1) and 11 USC 727(e).

7.    This Court entered an Order granting Debtor a discharge of his debts pursuant to

Section 727 of the Bankruptcy Code on October 2, 2003.

## COMPLAINT TO REVOKE DISCHARGE PURSUANT TO 11 USC SECTION 727(d)(1)

1-7.    Plaintiff restates and realleges paragraphs 1 through 7 as if fully set forth herein.

7.    On March 9, 2004, the Debtor delivered to the Trustee correspondence attached hereto and made a part hereof as **Exhibit A.**

8.    That the document attached as Exhibit A is a document prepared by the Debtor.

9.    That the document attached as Exhibit A states that the Debtor engaged in the following fraudulent activities prior to and after the filing of his Bankruptcy Petition:

      (i)    obtaining money and/or property through fraud within the meaning of Section 727(a)(7) of the Bankruptcy Code;

      (ii)    conspiring with Donald Harrington to perpetrate a fraud upon the Bankruptcy Court;

      (iii)    obtaining money, property or extension of credit with the intent not to repay the same.

10.    Section 727(d)(1) of the Bankruptcy Code provides that this Court may revoke Debtor's discharge if it was obtained through fraud of the Debtor, and Trustee did not know of such fraud until after the granting of such discharge.

11.    That the Trustee was unaware of Debtor's fraud until receipt of the letter attached as Exhibit A on March 9, 2004.

12.    By virtue of the Debtor's fraud, his discharge should be revoked pursuant to Section 727(d)(1) of the Bankruptcy Code.

WHEREFORE, the Plaintiff, JAMES E. STEVENS, Trustee, respectfully prays that this Court enter an Order revoking the discharge of the Debtor, TERENCE BRUCE RICHARDS, and for such other and further relief as this Court deems equitable and just.

JAMES E. STEVENS, Plaintiff

BY: _____
    Tyler A. Moore
    Attorney for Plaintiff

BARRICK, SWITZER, LONG,
 BALSLEY & VAN EVERA
One South Madison Street
Rockford, IL 61110-7109
(815) 962-6611

MAR 09 2004 16:50 FR HOUSEHOLD HTS          847 205 7439 TO 918159620687          P.02/03

James E. Stevens
One Madison Street
Rockford, Illinois 61104


Terence B. Richards
P. O. Box 7862
Gurnee, Illinois 60031


Dear Mr. James E. Stevens,

I need to make a confession. Donald Harrington and I both conspired to defraud the creditors. We both did this together, to rebel against our childhood upbringing. Donald's behavior is pathological. However, my reason for doing the fraudulent theft I did was to rebel against the difficult teenage years. As you can tell, I am very codependent and protective of the ones I care for. This was the result of my mother having Alzheimer's disease at age 40, and my father becoming an alcoholic over it. I had to care for them, and raise my younger brother and nephews. I never had a chance to do teenage antics at the time.

If you were to research the bankruptcy case carefully, you will notice that all the credit card and bank loan account contracts where all open and issued with only months apart. All the payday loans were taken out only days apart. This was accomplished with my knowledge base.

I work for a major financial institution, Household International who owns, Household Finance Corporation and Beneficial Finance Corporation. I work in the computer programming division of the home office, as computer programmer. My expertise is programming the delinquency, charge off, bankruptcy, and credit bureau reporting for 2 million loan account database. I have worked for this company for 19 years. You can verify this by the cover sheet.

Household (company name)
Technology (computer division)
Services (for the rest of the company and branch offices)

I knew how soon, to request the credit cards before the rest of the companies found out I was issued one from one of their competitors from the credit bureau. I knew how long the credit card or loan account is active and not delinquent (suspended or cancelled) to take money out against. Zero to 30 days the account is still active, after 60 days, the account will be suspended, and after 90 days the account is cancelled. I knew the account had to have a token payment (1/2 the standard payment) before 180 days to prevent the account from being charged off and a lawsuit filed against me. The legal and financial



EXHIBIT

A

jargon of creditors, debtors, contractual and recency delinquency is not a foreign language to me.

If you notice all the principal balances on these credit cards and bank loans are at the maximum. No payments were ever made on any of these loan accounts. Except for the credit card or bank loans which were taken out early in November of 2002, only a small token payment of one half of the standard payment.

All this activity was done after done after, I maxed out on the equity of my home at $113,500.00 dollars with the value of the home at $115,000.00 dollars. My budget at the time was very tight and was having problems with making the payments at the time. I met Donald and told him I was going to file bankruptcy. We both conspired to take out credit cards and bank loans with no intention of ever making payments on them.

In addition, the American Express green card with no credit limit is a very unsafe practice on their part. I understand the card is only supposed to be used for incidental expenses. However, for thieves, can take advantage of this card, and run up the balance to $38,000.00 dollars in a month and half. During this period of time, their security department did call me, to verify if the card is in the hands of the cardholder. Then, when the balance got too high, the turn off the limit, then I just called, and told them, I needed to buy medication. They would turn the card back on again.

I believe, both Donald Harrington, and I should be criminally charged for the fraudulent activity involved in this bankruptcy case. Donald may have been the pathological thief, but I was the one with the knowledge background to pull this off.

I was arrested just recently, for a simple assault charge. There was another individual in the holding cell, who shoplifted $500.00 dollars in merchandise. He is looking at a felony charge with imprisonment. I stole over $60,000.00 from banking institutions, and I don't even get a reprimand.

**UNITED STATES BANKRUPTCY COURT**
For the NORTHERN District of Illinois

In re

TERENCE BRUCE RICHARDS,

      Debtor*

Bankruptcy No. 03 B 71403

JAMES E. STEVENS, Trustee,

              Plaintiff,

          vs.

# 04A7077

TERENCE BRUCE RICHARDS,

              Defendant.

Adversary Proceeding No. 04 A _____

## SUMMONS

**To the above-named defendant:**    **TERENCE BRUCE RICHARDS**
                                     **P.O. Box 7862**
                                     **Gurnee, IL 60031**

**YOU ARE HEREBY SUMMONED** and required to serve upon **TYLER A. MOORE**, Plaintiff's attorney, whose address is **One Madison Street, Rockford, Illinois**, either a motion or an answer to the complaint which is now served upon you. If you elect to respond first by motion, as you may pursuant to Bankruptcy Rule 7012, that rule governs the time within which your answer must be served. Otherwise, you are required to serve your answer upon Plaintiff's attorney within thirty days (30) of the date of the issuance of this summons by the clerk except that the United States or an office or agency thereof shall serve an answer to the complaint within thirty-five (35) days after the date of issuance of the summons.

{If this summons and complaint is served in a foreign country.} Service of your answer must be made by the following date prescribed by the court:

The motion or answer served by you must be filed with this court not later than the second business day after service. IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS SUMMONS, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED BY THE COMPLAINT.

YOU ARE HEREBY NOTIFIED THAT A STATUS HEARING HAS BEEN SET AT THE FOLLOWING TIME AND PLACE: U. S. Bankruptcy Court, 211 South Court Street - Room 115

                      Rockford, Il 61101 at 9:30 A.M. August 18, 2004.

                                    **KENNETH S. GARDNER**
                                    Clerk of Bankruptcy Court

[Seal of the U.S. Bankruptcy Court]

Date of issuance:   July 14, 2004

By: _Agnes R. Bonifacio_
           Deputy Clerk

*Include all names used by debtor within last six years.

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

IN RE: ) In Bankruptcy Under Chapter 7
)
TERENCE BRUCE RICHARDS, ) Case No. 03-B-71403
)
Debtors. )
------------------------------------------- )
JAMES E. STEVENS, as Trustee, )
)
Plaintiff, )
)
vs. ) Adversary Case No. 03-A-7077
)
TERENCE BRUCE RICHARDS, )
)
Defendant.

## ORDER REVOKING DISCHARGE

THIS MATTER coming on to be heard on the 9th day of February, 2005, on

the Decision of the Court to Revoke the Discharge of Terence Bruce Richards, and

the Court being fully advised in the premises;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, for the reasons

as stated on February 9, 2005 by the Court, the Discharge Order for Terence

Bruce Richards entered by the Court is hereby revoked for the reasons stated on

the record.

ENTERED this ___ day of FEB 1 1 2005, 2005.

JUDGE MANUEL BARBOSA

BARRICK, SWITZER, LONG,
 BALSLEY & VAN EVERA
BY: JAMES E. STEVENS (26)
ONE MADISON STREET
ROCKFORD, IL 61104
(815) 962-6611

**03-71403** Terence Bruce Richards
Case type: bk Chapter: 7 Asset: Yes Vol: v Hon.: Manuel Barbosa
Date filed: 03/14/2003 Date of last filing: 02/11/2005

## Case Summary

| | | | | |
|---|---|---|---|---|
| Office: | Rockford | Filed: | 03/17/2003 | 12:00 AM |
| County: | McHenry | Terminated: | | |
| Fee: | Installment | Discharged: | | |
| Reopen: | | Reopened: | | |
| Previous Term: | | Converted: | | |
| Disposition: | Discharge Waived/Revoked | Dismissed: | | |
| Joint: | n | | | |
| 341 Meeting Date: | 04/21/2003 | Meeting Time: | 11:30 AM | |
| Confirmation Hearing: | | Hearing Time: | ) | |

Related adversary proceedings: 03-07063,03-07083,04-07077
Pending Status: Awaiting Closing ,Awaiting Discharge
Flags: AddChg, DSCHGREVOKED
Trustee: Ira Bodenstein    City: Madison   Phone:
Trustee: James E Stevens   City: Rockford  Phone: 815-962-6611  Fax: (815) - 9620687Email: jstevens@bslbv.com
Party 1: Terence Bruce Richards   (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)  (Debtor)

Location of Case File(s):

Volume: CS1
Location: Rockford: default open area
Date Checked Out: 2003-06-15 12:34:06

Hold:

EXHIBIT 1

1

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF ILLINOIS

WESTERN DIVISION

| | |
|---|---|
| RE: | ) |
| | ) |
| TERENCE BRUCE RICHARDS | )    03bk71403 |
| | ) |
| TRUSTEE JAMES E. STEVENS | )    04ap07077 |
| V. | ) |
| RICHARDS | ) |
| | ) |

The hearing in the above-captioned matter was taken before the Honorable Manuel Barbosa by Jennifer Williams, Certified Shorthand Reporter, on January 25, 2005 at the United States Federal Courthouse, 211 South Court Street, Courtroom 115, Rockford, Illinois.

APPEARANCES:

        MR. JAMES E. STEVENS
        Attorney at Law,
        Barrick, Switzer, Long, Balsley & Van Evera
        One South Madison Street
        Rockford, Illinois


        MR. TERENCE BRUCE RICHARDS
        Pro Se

2

CLERK: 1:30 call.  Terence Richards 04 07077.

MR. RICHARDS: Terence Bruce Richards.

MR. STEVENS: Trustee James E. Stevens.

THE COURT:  Good afternoon.  This matter has been specially set for hearing on the objection to or revocation of discharge brought by the Trustee, James Stevens under Section 727 against the debtor, Terence Bruce Richards.  Are both sides ready to proceed at this time?

MR. STEVENS: Yes, Your Honor.

MR. RICHARDS: Yes, Your Honor.

THE COURT: Very well.  Mr. Stevens, you may proceed at this time by calling your first witness.

MR. STEVENS: Thank you.  I'd like to call the defendant, Terence Richards, Your Honor.

THE COURT:  Mr. Richards, would you please step forward.

TERENCE BRUCE RICHARDS,

first witness called by the Trustee, having been first duly sworn by the Clerk of Court was examined and testified as follows:

DIRECT EXAMINATION

BY MR. STEVENS:

THE CLERK: If you will have a seat there and once you are seated, state your name for the record, please.

3

THE WITNESS:  Terence Richards.

Q        And your address, Mr. Richards?

A        Um, I'm in the middle of moving right now.
Right now 1000 Northwest Highway.

Q        What city?

A        Fox River Grove.

Q        Illinois?

A        Yes.

Q        You are the debtor in the Chapter 7
bankruptcy; is that correct?

A        Yes, Your Honor.

Q        You don't need to call me Your Honor.   And
you filed the bankruptcy petition and schedules yourself; is
that correct?

A        Yes.

Q        And you prepared those documents, yourself;
is that correct?

A        Yes.

Q        Did have you anyone assist you in the
preparation of your petition and/or your schedules?

A        No.

Q        To the best of your knowledge, I, James
Stevens, have been acting as your Chapter 7 bankruptcy
trustee?

A        To the best of my knowledge, yes.

4

     Q      Are you aware of anyone else that acted as trustee in your bankruptcy petition?

     A      I think you might have had assistance from James or Jim Balsley.

     Q      Okay.  Steven Balsley?

     A      Steven Balsley.

     Q      But those were lawyers from my office?

     A      Yes.

     Q      Now, you filed this bankruptcy on March 14, 2003?

     A      Yes.

     Q      Okay.  To the best of your knowledge, were you granted a discharge under the four-year bankruptcy on October 2, 2003?

     A      Yes.

     Q      I would like to show you what I will mark for identification purposes as Plaintiff's Exhibit No. 1.  Would you review that document, please?

     A      Okay.  I am familiar with that document.

     Q      And you have looked at both pages?

     A      Yes.

     Q      All right.  Did you, in fact, prepare that document?

     A      I prepared that document, but I don't know who faxed it.

Case 3:08-cv-50148     Document 4-2     Filed 07/30/2008     Page 8 of 42
Case 3:05-cv-50073     Document 3     Filed 05/05/2005     Page 63 of 84

6

Q      What parts of the letter do you dispute?

A      I dispute the fact that I never conspired with Donald Harrington and I also dispute--

Q      Hang on a minute so that we can keep on track here. So you dispute that you conspired with Donald Harrington; is that correct?

A      Yes.

Q      Did you perform the activities that are described in that letter yourself?

A      No, I did not. Not intentionally.

Q      But did you do that?

A      What activities?

Q      I'll make it more clear. Did you personally engage in the activities that are described in that letter?

A      I don't understand what you are asking.

Q      The letter says that you conspired to defraud creditors; is that correct?

A      No, I never conspired to defraud creditors.

Q      You also filed an affirmative defense and a verified-- I'm sorry. You also-- Strike that. You filed a verified answer and a verified affirmative defense in this case; is that correct?

A      Can you state that again?

Q      In this case, you have filed a verified answer--

7

A       Verified answer.

Q       -- and a verified affirmative defense; is that correct?

A       Yes.

Q       In essence, they are basically the same documents?

A       Yes.

Q       Caption is different?

A       Yes.

Q       In either one of those documents-- You set forth in, I think, the verified answer and in paragraph five-- and I will show you a copy of this, paragraph five.

A       Yes.

Q       All right.  You set forth a series of credit card creditors; is that correct?

A       Yes.

Q       And did you, in fact, borrow those funds that are stated in your verified answer from those creditors?

A       I did borrow this money from the creditors back in 1999.

Q       Did you ever pay them back?

A       Yes.

Q       And when you paid them back back in 1999, it was through a 401(K)?

A       401(K) withdrawal at the time.

8

MR. STEVENS:  I have nothing further.

THE COURT:  Very well.  You may step down.

MR. RICHARDS:  Do you have anymore?

MR. STEVENS: No.

THE COURT:  Actually, Mr. Richards, before you step down, since you are representing yourself, you have been asked a series of questions here by Mr. Stevens.  If you had an attorney, at this point your attorney would have the right to question you so as to clarify or rebut any inferences raised by the questions Mr. Stevens asked you.  So since you don't have an attorney, you may simply take the seat and, at this point, I will allow you to make any comments you wish to make with respect to the questions you were just asked by Mr. Stevens.

MR. RICHARDS: I was wondering if I could pass the cross-examination and go to my own defense, because I will be doing the same thing.

THE COURT:  You may as soon as Mr. Stevens concludes his case.

MR. STEVENS: I rest.  I move for entry of Exhibit No. 1 that I have submitted to the defendant.

THE COURT:  Any objection?

MR. RICHARDS:  No.

THE COURT:  It will be admitted without objection.

9

You may go ahead and take a seat.   Take a

seat right here, Mr. Richards.   At this point, you are free

to present your portion of your case.

(Plaintiff's Exhibit No. 1 admitted)

MR. RICHARDS: I have my papers.

THE COURT:   You may go ahead and get any

notes or papers you wish.

MR. RICHARDS: I was just in a bad car

accident yesterday and so I have been going sluggish today.

THE COURT:   Very well.

BY MR. RICHARDS:

MR. RICHARDS: Okay.   I would admit that I

did file, on March 14, 2003, my own bankruptcy case.   Um, I

would like to identify the fact that, you know, I have a

manic-depressive illness and I don't know if Mr. Stevens or

the Court is aware of that.

THE COURT:   You may go ahead and relate

everything you wish to state at this time.

MR. RICHARDS: Okay.   I would like to enter

this as an exhibit.

THE COURT:   Could you describe what it is?

MR. RICHARDS: It's a diagnostic sheet from

one of my doctors stating my illnesses when I was admitted

into the program.

THE COURT:   If you will hand that to me.

Case 3:08-cv-50148    Document 4-2    Filed 07/30/2008    Page 12 of 42
Case 3:05-cv-50073    Document 3    Filed 05/05/2005    Page 67 of 84

10

Ordinarily, I would have requested you have a copy made

available for Mr. Stevens.  Mr. Stevens, any objection?

MR. STEVENS: No, Your Honor.  This is all

within the packet or the answer, the affirmative defense.

THE COURT:  Okay.  We'll mark that as

Defendant's Exhibit No. 1.

(Defendant's Exhibit No. 1 marked for identification.)

MR. RICHARDS: Mr. Stevens asked for a

verified proof thereof of my mental illness and I would like

to enter this as the next exhibit.  I didn't provide this to

you.  I didn't get this--

MR. STEVENS: I am not going to object to

anything he is going to want as to exhibits.  I think Mr.

Richards should be able to advise the Court of whatever he

wants to today even though, from a technical standpoint, Your

Honor, I could object to these things I think.  Because he is

not represented by counsel, I'm going to afford him the

latitude and not object and allow in doctor's statements and

consultations and whatever else he wants to admit, Your

Honor.

THE COURT: Perhaps this might also help.

Mr. Richards, in your affirmative defense, you attached a

rather voluminous number of exhibits dealing with the subject

matter you are touching on right now.  To the extent that any

of these exhibits are copies of those, simply refer to them

11

and you need not move to admit them.  They are pleadings,

which are part of the record and you can simply refer to

them, if you wish.

        MR. RICHARDS: This one here is a new

document from the Social Security Administration.  After I

lost my job, I applied for social security disability and

they agreed that the medical evidence in the file shows that

the condition does cause some restrictions in your ability to

function, however you still should have the ability to do

unskilled medium work so I'm just stating that I do have a

mental illness and the government has recognized that as

being such.

        THE COURT:  We'll mark this as Defendant's

Exhibit No. 2.

(Defendant's Exhibit No. 2 marked for identification.)

        MR. RICHARDS: Back at the time when my

behavior was not the greatest and I was seeing a therapist at

the time and he was getting upset with me, he says you are

not watching your finances properly and you are basically out

of control and you should be inside of a hospital to protect

yourself, but I didn't get in until it was too late.  He

didn't send it to me until March 31st.  Can I enter that?

        THE COURT:  We'll mark this letter from

clinical psychologist J.R. Harris dated March 31, 2003 as

Defendant's Exhibit No. 3.

12

(Defendant's Exhibit No. 3 Marked for identification.)

MR. RICHARDS: And then a psychiatrist provided a letter stating which medications I was on at the time.

THE COURT: This is a letter dated May 12 of 2003 to be marked as Defendant's Exhibit No. 4.

(Defendant's Exhibit No. 4 marked for indentification.)

MR. RICHARDS: Now, on the same topic of my mental illness, if you look at the DSM, which is a book that is used by the psychiatrist and the psychologist team as, like, their bible. I don't know if you are familiar with that, but it's like the statutes book for law are for attorneys. This is their bible, the DSM. It does say that, you know, inside here that people who are manic-depressive do go on buying sprees and they also have a tendency of writing letters to different individuals and then also on page 359--

THE COURT: I believe this was part of your exhibit and I believe you highlighted certain portions; is that correct?

MR. RICHARDS: Yeah. If you are ever familiar with a bipolar person, they do go to a natural high and then they crash and then they are, like, regretful for what they did. Well, I regret going on the shopping spree and then after having my $45,000.00 stolen from me, which I will get into in a minute, I just put my feelings on hold

13

because I was upset.  I didn't want to put them away for five

years, so as soon as that case was over, I was able to, you

know, start thinking about what was happening and I just

regret going on the shopping spree.  Can I enter that as an

exhibit?

THE COURT:  Entered as Defendant's Exhibit

No. 5.

(Defendant's Exhibit No. 5 marked for indentification.)

MR. RICHARDS: Now, going back to 1999 and

the examples that Mr. Stevens has identified and the

creditors.  Back then, in 1999, I pulled up my credit report

and you will see that they all occurred about the same period

of time just like happened back in 2003, and I-- most of them

were-- The credit lines were cancelled and the cards were

cancelled by the consumer, which was I, because I went into--

because I went into a Consumer Credit Counseling program,

which was run by the government and they helped me set up a

debt reduction program and I was able to pay them back over a

period of time and then I went into my 401(K) and I took out

money and paid them through the 401(K).  Here is my credit

report that exemplified the people back in 1999.  I cancelled

the credit lines.

THE COURT:  This will be marked Debtor's

Exhibit No. 6, group exhibit.  Go ahead, Sir.

(Defendant's Exhibit No. 6 marked for indentification.)

14

MR. RICHARDS: This letter I got from Consumer Credit Counseling Services that states, "To whom it may concern," which was drafted to the Court and to Mr. Stevens in March 2003. "Mr. Terence Richards came to Consumer Credit Counseling Services of McHenry County, Inc. seeking advice concerning repayment of debt. At that time, it became apparent to me and to his counselor, Ms. Peggy Sarbaugh that debt accumulated was of sufficient magnitude that he would be advised to seek the advice of a bankruptcy attorney." Instead of seeking the advice of a bankruptcy attorney, I did proceed just to file my own case, because I did go see a couple of attorneys at the time and they were like, we don't know what to do for you. You don't have any money and we're going to be costing an arm and a leg, because we are going to run from Woodstock here for you so if you can, do it yourself. It says here and then continues, Mr. Richards had been a prior client of mine in the late 1990s and entered into a debt management program and paid off a sizable amount of credit card debt over a period of one year and that he subsequently cashed in a portion of his 401(K) plan and paid off his debts and to please consider this statement in deliberating over his bankruptcy discharge.

THE COURT: Mark that has Debtor's Exhibit No. 7.

(Defendant's Exhibit No. 7 marked for identification.)

Case 3:08-cv-50148   Document 4-2   Filed 07/30/2008   Page 17 of 42
Case 3:05-cv-50073   Document 3   Filed 05/05/2005   Page 72 of 84

15

MR. RICHARDS: I don't know if this is
pertinent, but Mr. Harrington-- I don't know if you recognize
him as not being up on the level and, you know, conning and
deceiving people.  He has deceived this Court and I don't
know if the Court wants to recognize that or not, but I don't
know if that is pertinent to this except for when I get down
to actually showing the $45,000.00 that was stolen from me,
but after I filed my bankruptcy case, I got a letter from the
U.S. Attorney's office saying that maybe I could convert my
case to a Chapter 13 Bankruptcy and they asked, you know, for
various pieces of information, like the payroll stubs, income
taxes, credit card statements and check ledgers.  And I
provided all of the information to them and I would like to
enter that as an exhibit.

THE COURT: Debtor's No. 8.

(Defendant's Exhibit No. 8 marked for identification.)

MR. RICHARDS: At the time, I was
overextended on my house.  They were actually able to sell it
for $113,000.00 and not the $115,000.00 that I was told it
was worth and I had to find a place to live.  I had been
living inside of a motel.  Mr. Stevens has recognized I live
at the Fox River Grove Hotel while the church has been paying
for me for the past six months while I try to find a job and
get my life re-established.  I was, back then, trying to take
out a 401(K) hardship withdrawal to buy a mobile home.

16

MR. STEVENS: Excuse me, Your Honor.  I don't contest that he withdrew funds from his 401(K) post petition.  They're exempt assets and I don't think the 401(K) funds are in dispute here today.  I don't think there's any relevance to them at all.

MR. RICHARDS: But I was going to use them to buy a mobile home, which would have freed up my income.  I would like to enter that as-- The same day I got approved for that withdrawal, the U.S. Trustee's office decided not to proceed any further with converting my case to a Chapter 13 and told me to just go ahead and proceed under a Chapter 7.

THE COURT: Document group Exhibit 9 for defendant.  Letter dated April 24, 2003 from the U.S. Trustee's office will be No. 10.

(Defendant's Exhibit No. 9 and No. 10 marked for indentification.)

MR. RICHARDS: So I was going to partake in Chapter 13 bankruptcy under the guidance of the U.S. Trustee's office and I would have had the money to pay back the creditors and living in a mobile home and I would have paid off the mobile home.  I wouldn't have had any mortgage to pay and that would have freed up some money for me to pay back to the unsecured creditors.  Unfortunately, I used poor judgment and when I got the $45,000.00 check I was going to put it into my own checking account, but, instead, Mr.

17

Harrington kept saying trust me and why don't you put the

money into my account and I was feeling bad and I said, okay,

here.  Let's see if I can trust him.  Going back and talking

to the branch manager, who wrote this affidavit verifying

what I was saying--

THE COURT:  Defendant's Exhibit No. 11.

(Defendant's Exhibit No. 11 marked for identification.)

MR. RICHARDS: -- that he was-- You know,

going back in and talking to him, he was like, I was going to

tell you not to be stupid and trust somebody else with that

money.  I was going to tell you to proceed to put it into

your own account and that you only put the $200.00 into it

and here is a copy of the check that Mr. Harrington signed--

THE COURT:  Defendant's Exhibit 12.

(Defendant's Exhibit No. 12 marked for identification.)

MR. RICHARDS:-- to prove that he was at the

Harris Bank.  Here is a copy of their contact on April 29

when I was-- I actually spent an hour and thirty-nine minutes

with the people.

THE COURT:  Defendant's Exhibit 13.

(Defendant's Exhibit No. 13 marked for identification.)

MR. RICHARDS: Here is the account where the

money was actually going to go into.

THE COURT:  Defendant's Exhibit 14.

(Defendant's Exhibit No. 14 marked for identification.)

18

MR. RICHARDS: And, like I said, he pleaded guilty, but I just didn't have the heart to send him away for five years. That just drove me crazy. I came here a couple times and told Mr. Stevens prosecuting somebody is not my personality.

THE COURT: Debtor's Exhibit 15.

(Defendant's Exhibit No. 15 marked for identification.)

MR. RICHARDS: And then actually a year later, on March 8, the same day I actually wrote that letter in Court, Mr. Stevens said, you know, that I tried offering to pay back-- because I was working at the time and I was working at a $60,000.00 a year job and even a year later I was still trying to offer to make payments and he even brought that to the Court's attention and here is a transcript from that day.

THE COURT:  Transcript from March 8, 2004.

(Exhibit No. 16 marked for identification.)

MR. RICHARDS: Why did I write this letter, just because I was just frustrated I was just upset with the whole thing and the way things were going.  I just really wanted to make some payments in.  I wrote this letter and my boss saw it and fired me over it.

THE COURT: The letter you are referring me to is what I have had marked as Plaintiff's Exhibit No. 1?

MR. RICHARDS: Yes.

20

solely defense of superficial statements.  The corpus is the
body of crime which prove to acts or service in mens rea.

THE COURT:  I think we generally know what
the doctrine stands for.  You can make your statement
relative to that, if you wish.

MR. RICHARDS: Basically because of my mental
illness, corroboratory evidence probably would have been
suffice enough if I did commit a crime, you know,
corroborating evidence based on that rule probably.  You
know, that's all I wanted to say.  Because basically the
doctrine protects people who are mentally unstable from being
accused of a crime based on the false letter.

THE COURT:  Based on the what?

MR. RICHARDS: False letter.  That's what I
wanted to present.

THE COURT:  Okay.

MR. STEVENS: Could I cross-examine?

THE COURT:  Yes.  At this point, Mr.
Richards, Mr. Stevens has a right to ask you questions
relative to the statements you are making.

Mr. Stevens, you may proceed.

CROSS-EXAMINATION

By Mr. Stevens:

Q        Mr. Richards, you do admit you went on the
shopping spree?

Case 3:08-cv-50148    Document 4-2    Filed 07/30/2008    Page 22 of 42
Case 3:05-cv-50073    Document 3    Filed 05/05/2005    Page 77 of 84

21

A        Yes.

Q        And it's your term, "shopping spree?";
correct

A        Shopping spree, yes.  That is what the
psychiatrist called it when I went into the hospital.  To
diagnose a person they ask, you know, Have you gone on a
shopping spree?  And I was like, yeah, I went on a $60,000.00
one recently and they were like, Yeah, okay.  You are
bipolar.

Q        And you did that prior to filing of the
bankruptcy?

A        Apparently twice back in 1999 and in 2003.

Q        And did you tell me, as a Chapter 7 trustee,
before March 9 of 2003, that you had engaged in this shopping
spree and this activity?

A        Yes.

Q        You did?

A        Did I tell you I went on the shopping spree?
I told you there were a lot of assets that got transferred to
Mr. Harrington.

Q        Yes, you did do that.  But prior to October
2nd of 2003-- and I'm using that date, because that is the
date that your discharge order was entered.  All right? --
had you given me any written documentation that you had
engaged in this type of activity that is described in

22

Plaintiff's Exhibit No. 1?

     A      I don't understand the question.

     Q      Prior to October 2, 2003,--

     A      Right.

     Q      -- did you tell me that you had engaged in fraudulent activities?

     A      I said I, you know, went on-- There were assets transferred.  I don't know if it was fraud or if it was a shopping spree, but--

     Q      What you told me was that you transferred assets to Donald Harrington; is that correct?

     A      Yes.  And I filed a motion to try to recover those before the Court, because after I couldn't pay back into it and wanting to buy a mobile home and making-- The creditors had to be paid back so I filed a motion to surrender the assets.

     Q      I want to refer you to the letter that you wrote, which is Plaintiff's Exhibit No. 1, and at the bottom of page one, you describe in detail how you obtained these funds from creditors, do you not?

     A      Yeah, but this is also false.  This is just a story I made up.

     Q      You just made it up?

     A      Yeah.  If you are going to go on a shopping spree like I did in 1999 and I ran up all these credit cards

Case 3:08-cv-50148    Document 4-2    Filed 07/30/2008    Page 24 of 42
Case 3:05-cv-50073    Document 3    Filed 05/05/2005    Page 79 of 84

23

in a couple of months, your knowledge of programs and

delinquency status has nothing to do with going on a shopping

spree.

Q       So now you dispute the content of the March

9th letter?

A       Yes.

Q       And you had a chance to talk to a

psychiatrist, as well, back in July?

A       Yes, I did.

Q       You were fired after your employer saw the

March 9th letter?

A       Yes.

MR. STEVENS: Okay.  Nothing further, Your

Honor.

THE COURT:  Okay.  Mr. Richards, was there

anything further you were going to present today?

MR. RICHARDS: No, Your Honor.

THE COURT:  Very well.  Mr. Stevens just

asked you a couple of questions, If you feel you would like

to elaborate anything on the basis of those questions only at

this time, you may do so.

MR. RICHARDS: No, just stating that the

letter was a false letter and I should never have wrote it.

THE COURT:  Very well, you may now go ahead

and take your seat at the table and be excused.

24

MR. RICHARDS: Okay.

MR. STEVENS: I'm in a little bit of an awkward position, but I'm going to have to testify as rebuttal to what was just testified to.

THE COURT: Very well. There were some suggestions during the course of the testimony from Mr. Richards that there had been conversations with you from Mr. Richards, as well as another professional, I guess, on his behalf and, although generally I am reluctant to allow attorneys to testify, if you would please come forward and be sworn we will allow you to do so.

JAMES STEVENS,

being a witness called on and having been first duly sworn was examined and testified as follows:

MR. STEVENS: For the record, Your Honor, my name is James Stevens. I'm an attorney with the law firm of Barrick, Switzer, Long, Balsley & Van Evera. I'm before the Court today both in an attorney capacity and as Chapter 7 bankruptcy trustee in the Terence B. Richards case. In rebuttal to what Mr. Richards testified to, I can state to the Court that Mr. Richards has, on more than one occasion, verbally affirmed to me that: (1) he wrote the letter of March 9, 2003 and that, (2) the contents were true and correct and that (3) that he was sorry for engaging in the activity and I think the Court needs to be aware of that and

25

I have nothing further.

         THE COURT:  Any questions you wish to ask at this time, Mr. Richards?

         MR. RICHARDS: Back in July, you spoke to a professional health worker?

         MR. STEVENS: Yes, I did.

         MR. RICHARDS: Can you elaborate on what maybe transpired in that conversation?

         MR. STEVENS: You want me to?

         THE COURT:  Mr. Richards--

         MR. RICHARDS: Do you know who the person was first?

         MR. STEVENS: As I sit here today, I can't remember that person's name.  If I do recall--

         MR. RICHARDS: Do you know who his role was?

         MR. STEVENS: No, I do not?

         MR. RICHARDS: He was just a social worker who was not familiar with me at all.

         THE COURT:  Mr. Richards, this goes a little beyond the testimony given by Mr. Stevens and further would appear to touch on probably some sensitive personal matters, which, although we certainly opened the door and touched on a lot of them, I just feel I need to admonish you since you are proceeding without a lawyer, unless you feel it's crucial to your case.  You might not want to enter into that territory.

Case 3:08-cv-50148    Document 4-2    Filed 07/30/2008    Page 27 of 42
Case 3:05-cv-50073    Document 3    Filed 05/05/2005    Page 82 of 84

27

defraud creditors.  I thought it was basically he was being

defrauded by Mr. Harrington so, Your Honor, I can state

affirmatively that the Trustee had no knowledge prior to the

March 9, 2004 date of the activities complained of or set

forth in the March 9th letter.  I would also point out to the

Court that the explanation of what Mr. Richards did,

contained in the March 9th letter, I think on it's own, sets

forth a basis for revoking the discharge.  Mr. Richards has

made reference to the fact that he didn't commit a crime.

I'm not accusing him of a crime here, Your Honor.  I'm asking

the Court under 727(d)(1) to vacate the discharge because of

the fraud described in the letter and, as I stated on

rebuttal to Mr. Richards' testimony, he has stated to me on

numerous occasions that, unfortunately, the information

contained in this letter is true and correct.  And for those

reasons, Your Honor, I would ask that the Court find in favor

of the plaintiff and against the defendant and I would also

point out to the Court that I do not believe that there's an

intent factor involved in this case.

            THE COURT:  That there's a--

            MR. STEVENS: No intent factor like there

would be in a criminal case when you are proving fraud.

            THE COURT: You are saying there would be no

elements of intent required?

            MR. STEVENS: Correct.

28

THE COURT: Very well. Mr. Richards, final statement from you?

MR. RICHARDS: Um, just want to say I'm sorry for writing the letter. I was-- Like I said, I was just coming off my high and I was totally upset by the fact that I couldn't pay back under the Chapter 13 plan and I was just frustrated, because even a year later I was trying to offer to make payments to the Court for what happened and that is not the type of person I am to try to defraud people and I was defrauded by Mr. Harrington and had no intent to defraud anybody else at the time.

THE COURT: Okay. Mr. Richards has not raised the question of admissibility of the letter, but has merely tried to explain it. In any event, for the record, I would point out that the letter constitutes clearly an admission his contemplation under the federal rule of evidence, specifically rule 801(d)(2)(A) in that it provides under the rule in the case law that such admissions are substantive evidence as contrasted with mere impeachment statements and there's no requirement for even additional preliminary documentation and they can be used by a party opponent. There's no requirement of mental capacity as to the declarant and the statement need not even relate to the matter to which the party had personal knowledge. It need not be against interest at the time it was made and, frankly,

31

# C E R T I F I C A T E

I, JENNIFER WILLIAMS, Certified Shorthand Reporter, do hereby

certify  that I am a court reporter doing in shorthand the

bankruptcy hearing in the matter regarding Terence Bruce

Richards, Trustee James E. Stevens v. Richards on January 25,

2005 and that the foregoing is a true and correct transcript

of my shorthand notes so taken aforesaid.

I further certify that I am neither counsel for nor related

to nor employed by any of the parties to this action and that

I am not a relative or employee of any counsel employed by

the parties hereto or financially interested in the action.

Dated at Rockford, Illinois, the 1st day of March, 2005.


_____

Jennifer Williams

Certified Shorthand Reporter

License No. 084-004433

1

1                        UNITED STATES BANKRUPTCY COURT

2                        NORTHERN DISTRICT OF ILLINOIS

3                              WESTERN DIVISION

4
    TERENCE BRUCE RICHARDS,          )    Case No. 03 B 73590
5                  Debtor           )
                                     )
6                                    )
    JAMES E. STEVENS, Trustee        )
7                                    )    Adv. 04 A 7077
    V.                               )
8                                    )
    TERENCE BRUCE RICHARDS           )
9

10
    APPEARANCES
11
            JAMES E. STEVENS
12          Attorney-at-Law
            Barrick, Switzer, Long, Balsley and VanEvra
13          One South Madison Street
            Rockford, Illinois
14
            TERENCE BRUCE RICHARDS
15          Pro Se
            Appearing telephonically
16
            The hearing in the above-captioned matter was taken
17          before the Honorable Manuel Barbosa by Jennifer
            Williams, Certified Shorthand Reporter, on
18          February 9, 2005 at the United States Federal
            Courthouse, 211 South Court Street, Courtroom 115,
19          Rockford, Illinois.

20

21

22

23

24

25

C-1

1

1       CLERK: Terence Richards  04 07077

2       MR. STEVENS: James Stevens, Chapter 7

3    Trustee.

4       THE COURT: Mr. Richards, are you on the

5    line?   Good morning, Mr. Richards.  We can really not hear

6    you.  Your voice is very faint.  We cannot hear you in the

7    courtroom.

8       MR. RICHARDS: I can hear you.

9       THE COURT:  We do have Mr. Richards on the

10   line now.  He did arrange to appear telephonically here this

11   morning with Chambers and indicated he was not feeling well

12   today.

13       This matter is here today for status and

14   decision on trial of the Trustee's adversary complaint to

15   revoke discharge, which was held on January 25, 2005.  The

16   defendant, Terence Richards, is the debtor herein having

17   filed a voluntary petition for relief under Chapter 7 of the

18   Bankruptcy Code on March 14th of 2003.  The debtor received a

19   discharge of his debts pursuant to Section 727 of the

20   Bankruptcy Code on October 2, 2003.  On March 9, 2004 the

21   debtor delivered to the Trustee correspondence constituting

22   an admission where he outlines a series of acts carried out

23   in conjunction with another individual so as to defraud his

24   creditors.  The letter was attached as an exhibit to the

25   Trustee's adversary complaint as Exhibit A.  The letter was

C-2

2

1   further introduced into evidence during the course of trial

2   of this matter as an admission and was admitted into evidence

3   without objection.

4                    Section 727(d)(1) provides in relevant part

5   as follows:

6                    On request of the Trustee, a creditor, or

7   the U.S. Trustee, the Court shall revoke a discharge granted

8   under subsection (a) of this section if such discharge was

9   obtained through the fraud of the debtor, and the requesting

10   party did not know of such fraud until after the granting of

11   such discharge.

12                    Bankruptcy relief is intended to provide the

13   honest, but unfortunate debtor with a fresh start.  In re

14   Garman, 643 F.2d 1252, 1257 (Seventh Circuit 1980), Cert.

15   denied, 450 U.S. 910(1981). Objections to discharge are

16   liberally construed in favor of debtors and strictly against

17   objectors in order to promote the fresh start policy. That is

18   from the case of Soft Sheen Products, Inc. versus Johnson, 98

19   B.R. 359, 364 (Bankruptcy Northern District of Illinois

20   1988). Plaintiff has the burden of proving all elements of

21   the objection by a preponderance of the evidence.  This is in

22   re Scott, 172 F. 3d 959, 966 (Seventh Circuit 1999).

23                    To warrant revocation under Section

24   727(d)(1), the Trustee must prove two elements:  (1) that the

25   debtor procured his discharge by fraud and (2) that the

3

1    Trustee did not know and could not have known of the fraud

2    before the discharge.  In re Spears, 291 B.R. 825, 828

3    (Bankruptcy Central District of Illinois 2003). Fraud for

4    this purpose means fraud in fact, that is, the debtor must

5    have had an intent to deceive.  In re Bar 207 B.R. 160, 165

6    (Bankruptcy Northern District of Illinois 1997). Section

7    727(d) does not require direct evidence of intent, but rather

8    an inference of fraudulent intent can also be drawn from the

9    course of contact or all surrounding circumstances.  It's

10   from in re Yanikous 996 F.2d 866, 905 (Seventh Circuit 1993).

11            THE COURT:  We are getting a lot noise.  Our

12   equipment does strange things.  Are you still able to hear

13   me, Mr. Richards?

14            MR. RICHARDS: Yes.

15            THE COURT: The defendant filed an

16   affirmative defense to which he attached 27 exhibits in

17   support of his allegations.  In large measure, the

18   defendant's assertion is that he was deceived, manipulated or

19   otherwise used by individual by the name of Donald James

20   Harrington to commit fraud upon creditors and, further, the

21   defendant himself was victimized to a large extent by Mr.

22   Harrington.  Further, the defendant's first three exhibits

23   attached to his affirmative defense are intended to support

24   his assertion that he suffers from bipolar and obsessive

25   compulsive disorders which made his vulnerable to Mr.

C-4

4

1    Harrington's manipulation, as well as induced other states of

2    mind which brought on the destructive behavior responsible

3    for his debts.  These exhibits, which were admitted without

4    objection, establish that the defendant has been diagnosed

5    with bipolar disorder and obsessive compulsive behavior

6    patterns.  Exhibit 3 being a diagnostic manual of mental

7    disorders from the American Psychiatric Association was

8    introduced to support these assertions.  There was no expert

9    testimony concerning the content of these exhibits.  The

10   debtor's testimony concerning these exhibits supports the

11   diagnosis referred to in the exhibits and asserted that his

12   condition led to periods of depression and other behavior

13   patterns that he would argue were characterized by impaired

14   judgment.  However, neither these exhibits nor his testimony

15   in court establish that the defendant was deprived of the

16   capacity to understand the nature of his acts or that he was

17   otherwise deprived of the ability to act in accordance with

18   that understanding.

19           The debtor's letter to the Trustee, which is

20   Trustee's Exhibit 1, is a comprehensive admission by the

21   defendant with detailed clarity as to support the necessary

22   elements for the Trustee's case.  The defendant asserts that

23   the letter was not signed or verified, but he has made no

24   issue of the fact that the letter is his.  The letter points

25   out the defendant's background as a computer programmer for a

5

1    major financial institution.  He obtained expertise in

2    programming the delinquency, charge-off, bankruptcy and

3    credit bureau reporting for two million loan accounts.  He

4    states in the letter he had worked for this company for 19

5    years and was able to use this experience in the furtherance

6    of a scheme which he conspired with Donald Harrington.  He

7    testified that the letter was written during a period of

8    depression, but the voluntary nature of his confusion is not

9    at issue, but rather the veracity of the its content.  The

10   confession letter sets forth an intricate and detailed scheme

11   consistent with the debts accumulated by the debtor and

12   reflects a calculated plan to defraud creditors.  Defendant's

13   mental and emotional state has not been shown by competent

14   evidence to have deprived him of the ability to formulate an

15   intent or judgment so as to absolve him of responsibility.

16   There is no question that Mr. Richards is himself a victim in

17   this matter and that he was also misled and defrauded by Mr.

18   Harrington.  This Court cannot conclude, however, that Mr.

19   Harrington's perhaps more active and deceitful role absolves

20   Mr. Richards' conduct with respect to his creditors.  Mr.

21   Richards has suffered personally and financially to a degree

22   that warrants some sympathy, but although he is a victim, he

23   is not an innocent victim under the applicable law.

24            Finally, this Court further finds that the

25   Trustee did not know of the debtor's fraud as set forth in

C-6

6

1   the defendant's letter until the letter was received by the

2   Trustee subsequent to the entry of the discharge order.

3   While the Trustee certainly knew of Mr. Harrington's

4   activities at a relatively early stage of this bankruptcy,

5   there is nothing in the record to suggest that the Trustee

6   had any knowledge of the debtor's role as outlined in the

7   letter.  Accordingly, this Court will enter judgment in favor

8   of the Trustee and against the defendant, Mr. Richards.

9                Mr. Richards, the Court will enter an order

10  in accordance with this opinion and it will be mailed to your

11  last known address when you last appeared in Court.  Mr.

12  Richards, you stated that you were staying at a temporary

13  residence?  Would you be able to state what your current

14  address is?

15               MR. RICHARDS: I have a new apartment.  It's

16  2101 Stone Lake Road. THE COURT:  What town is that in?

17               MR. RICHARDS: It's Woodstock, Illinois

18  60098.  If you hear a lot in the background, that is from the

19  surgery.

20               THE COURT:  We are sending an order to you

21  in accordance with this decision that I read into the

22  record.

23               MR. RICHARDS: Your Honor, if I want to seal

24  this, because I do have competent evidence that I got from a

25  psychiatrist.

C-7

7

1              THE COURT:  Mr. Richards, I understand you

2    may wish to do that.  You have a right to do that.  It's not

3    my role to advise you as to how to go about doing that, but

4    that is your right.  You will be receiving the order shortly

5    and I wish you good luck, Sir.

6              MR. RICHARDS: What was the final decision?

7    Was is unintentional fraud?

8              THE COURT: I didn't understand what you

9    said, Sir, but the bottom line is I found in favor of the

10   Trustee with respect to the complaint and, as I say, you will

11   receive an order, a judgment order.

12             MR. RICHARDS: Concerning my discharge?

13             THE COURT: That's correct, Sir.

14             MR. STEVENS: Thank you, Your Honor.  I will

15   draft an order and submit it to Chambers either this

16   afternoon or this morning and then I will followup with this

17   after we get a copy of the same to Mr. Richards.  I will

18   serve it on him at his as last known address by first class

19   mail.

20   (Whereupon the proceedings ended.)

21

22

23

24

25

C-8

8

```
 1                    C E R T I F I C A T E
 2    I, JENNIFER WILLIAMS, Certified Shorthand Reporter, do hereby
 3    certify that I am a court reporter doing in shorthand the
 4    above-mentioned bankruptcy hearing on February 9, 2005 and
 5    that the foregoing is a true and correct transcript of my
 6    shorthand notes so taken aforesaid.
 7    I further certify that I am neither counsel for nor related
 8    to nor employed by any of the parties to this action and that
 9    I am not a relative or employee of any counsel employed by
10    the parties hereto or financially interested in the action.
11    Dated at Rockford, Illinois, the 1st day of March, 2005
12
13
14
15
16
17                             _____
18                             Jennifer Williams
19                             Certified Shorthand Reporter
20
21
22
23
24
25
```

C-9

Case 3:08-cv-50148    Document 4-2    Filed 07/30/2008    Page 39 of 42
Page 1 of 6
WAIS Document Retrieval
Case 3:05-cv-50073    Document 11    Filed 08/03/2005    Page 52 of 57

From the U.S. Code Online via GPO Access
[wais.access.gpo.gov]
[Laws in effect as of January 2, 2001]
[Document not affected by Public Laws enacted between
  January 2, 2001 and January 22, 2002]
[CITE: 11USC727]


                    TITLE 11--BANKRUPTCY

                  CHAPTER 7--LIQUIDATION

  SUBCHAPTER II--COLLECTION, LIQUIDATION, AND DISTRIBUTION OF THE ESTATE

Sec. 727. Discharge

     (a) The court shall grant the debtor a discharge, unless--
          (1) the debtor is not an individual;
          (2) the debtor, with intent to hinder, delay, or defraud a
     creditor or an officer of the estate charged with custody of
     property under this title, has transferred, removed, destroyed,
     mutilated, or concealed, or has permitted to be transferred,
     removed, destroyed, mutilated, or concealed--
               (A) property of the debtor, within one year before the date
          of the filing of the petition; or
               (B) property of the estate, after the date of the filing of
          the petition;

          (3) the debtor has concealed, destroyed, mutilated, falsified,
     or failed to keep or preserve any recorded information, including
     books, documents, records, and papers, from which the debtor's
     financial condition or business transactions might be ascertained,
     unless such act or failure to act was justified under all of the
     circumstances of the case;
          (4) the debtor knowingly and fraudulently, in or in connection
     with the case--
               (A) made a false oath or account;
               (B) presented or used a false claim;
               (C) gave, offered, received, or attempted to obtain money,
          property, or advantage, or a promise of money, property, or
          advantage, for acting or forbearing to act; or
               (D) withheld from an officer of the estate entitled to
          possession under this title, any recorded information, including
          books, documents, records, and papers, relating to the debtor's
          property or financial affairs;

          (5) the debtor has failed to explain satisfactorily, before
     determination of denial of discharge under this paragraph, any loss
     of assets or deficiency of assets to meet the debtor's liabilities;
          (6) the debtor has refused, in the case--
               (A) to obey any lawful order of the court, other than an
          order to respond to a material question or to testify;
               (B) on the ground of privilege against self-incrimination,
          to respond to a material question approved by the court or to
          testify, after the debtor has been granted immunity with respect
          to the matter concerning which such privilege was invoked; or
               (C) on a ground other than the properly invoked privilege
          against self-incrimination, to respond to a material question
          approved by the court or to testify;

                            D-1

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

(8) the debtor has been granted a discharge under this section, under section 1141 of this title, or under section 14, 371, or 476 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition;

(9) the debtor has been granted a discharge under section 1228 or 1328 of this title, or under section 660 or 661 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition, unless payments under the plan in such case totaled at least--

(A) 100 percent of the allowed unsecured claims in such case; or

(B)(i) 70 percent of such claims; and

(ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort; or

(10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter.

(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

(c)(1) The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.

(2) On request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or

(3) the debtor committed an act specified in subsection (a)(6) of this section.

(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge--

(1) under subsection (d)(1) of this section within one year after such discharge is granted; or

(2) under subsection (d)(2) or (d)(3) of this section before the later of--

(A) one year after the granting of such discharge; and

(B) the date the case is closed.

D-2

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 50073 | **DATE** | 12/23/2005 |
| **CASE TITLE** | RICHARDS vs. STEVENS | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the decision of the bankruptcy court is affirmed.

*Philip G. Reinhard*

■[ For further details see text below.]

Notices mailed by Judicial staff.

---

## STATEMENT

Appellant, Terence Bruce Richards, appeals from an order of the bankruptcy court revoking his chapter 7 discharge. The trustee, James Stevens, moved to revoke the discharge after receiving a letter (which appellant admits preparing) in which appellant says he and Donald Harrington conspired to defraud appellant's creditors by taking out "credit cards and bank loans with no intention of ever making payments on them." The bankruptcy court held a hearing and then found that the letter was "a comprehensive admission by the [appellant] with detailed clarity as to support the necessary elements of the trustee's case." Tr. 2/9/2005, p. 4.[1] The bankruptcy court found "[t]he confession letter sets forth an intricate and detailed scheme consistent with the debts accumulated by the debtor and reflects a calculated plan to defraud creditors," id. p. 5., and that "the [t]rustee did not know of the [appellant's] fraud as set forth in the [appellant's] letter until the letter was received by the [t]rustee subsequent to the entry of the discharge order." Id. p. 5-6. The bankruptcy court entered an order revoking appellant's discharge on February 11, 2005, post-trial motions were filed on February 17, 2005 and denied March 30, 2005. Appellant filed notice of appeal on March 4, 2005. The notice of appeal became effective on denial of the post-trial motions on March 30, 2005. Fed. R. Bankr. P. 8002 (b) (4). Jurisdiction is proper under 28 U.S.C. § 158 (a) (1).

Appellant argues the bankruptcy court lacked jurisdiction but his argument is difficult to follow. He discusses accusations he was stalking a third party but stalking was not at issue in the trustee's action to revoke discharge. Revocation of discharge is clearly within the jurisdiction of the bankruptcy court. 11 U.S.C. § 727 (d); 28 U.S.C. § 157 (a), (b) (2).

Appellant also contends the trustee failed to prove all the elements of his case to revoke discharge. To revoke a discharge under 11 U.S.C. § 727 (d) (1) the trustee must prove that the debtor procured his discharge by fraud and that the trustee was unaware of the fraud prior to the discharge. Appellant appears to be arguing that appellee failed to prove intent, a necessary element of fraud. While it is true appellee made a statement to the effect he did not believe there was an "intent factor," the bankruptcy court, in discussing the elements required to be proven to revoke discharge, stated "the debtor must have had an intent to deceive." Tr.

---

Case 3:05-cv-50073    Document 13    Filed 12/23/2005    Page 2 of 2

## STATEMENT

2/9/2005, p. 3. The bankruptcy court's finding against appellant, therefore, was based on a determination appellant had an intent to deceive.

Numerous documents, including appellant's verified answer to the complaint to revoke discharge, were admitted in the bankruptcy court but are not included in the record on appeal. The appellant bears the burden of ensuring the record on appeal includes all the items relevant and necessary to support his position. See In re:Brock Equipment Co., No. 01 C 50218, 2002 WL 88919, *4 (N.D. Ill. Jan. 22, 2002) (Reinhard, J.). The bankruptcy court relied on this documentary evidence as well as the testimony presented to reach its decision. Based on the record before it, the court cannot say the bankruptcy court reached the wrong result.

For the foregoing reasons, the decision of the bankruptcy court is affirmed.

---

1. The record from the bankruptcy court does not include any transcripts of these proceedings but both parties have submitted transcript copies as appendices to their briefs.